# MODERN WOODMEN OF AMERICA *vs.* JULIA M. CECIL.

*Life Insurance—Proofs of Death—Admissibility of Evidence—Unconnected Bill of Exceptions—Presumption Against Suicide—Instructions to the Jury.*

In an action on a death benefit certificate, after the defendant had admitted the fact of the death of the insured and that due proof thereof had been made, the defendant's counsel offered in evidence generally, and not for any particular purpose, a bundle of papers which he said were the death proofs in the case. One of the papers was a clipping from a newspaper giving an account of the death of the insured and

stating that he had committed suicide. Another was an affidavit of the plaintiff, the beneficiary under the certificate, also stating that the insured had committed suicide. *Held*, that these papers thus offered were not admissible in evidence, since it was unnecessary to offer proofs of death, the receipt of the same having been admitted by the defendant, and, although the said affidavit may have been admissible if offered separately, it was properly excluded if offered in connection with the other papers as part of the proofs of death.

When a bill of exceptions containing the prayers offered at the trial of a case is not connected by reference with a previous bill of exceptions containing evidence, Court cannot consider such evidence in passing upon the correctness of the prayers.

A death benefit certificate provided that it should be void if the insured should, within three years, die by his own hand, whether sane or insane. In an action on the certificate, the evidence showed that the death of the insured was caused by his drinking carbolic acid. *Held*, that the jury was properly instructed, at the instance of the plaintiff, that when death results from the taking of a quantity of carbolic acid, self destruction is not presumed, but the law presumes that the same was the result of accident, and the burden of proof in this case is upon the defendant company to show that the same was taken intentionally for the purpose of causing death, by a preponderance of evidence, and that unless the jury find from the evidence that the insured intentionally took carbolic acid for the purpose of causing death, the verdict should be for the plaintiff.

*Held*, further, that it was proper to instruct the jury, at the instance of the defendant, that if they should believe from all the evidence that the insured committed suicide, then their verdict should be for the defendant.

*Decided June 24th, 1908.*

Appeal from the Circuit Court for Frederick County (HEN-DERSON, J.).

*Plaintiff's 3rd Prayer.*—The plaintiff prays the Court to instruct the jury that where death results from the taking of a dose or quantity of carbolic acid self destruction is not presumed, but the law presumes the same was the result of accident, and the burden of proof in this case is upon the defendant company to show that the same was taken intentionally and for the purpose of causing death, by a preponderance of evidence, and that it was not the result of accident; and unless

the jury find from the evidence in this case that Harry Cecil intentionally took said quantity or dose of carbolic acid for the purpose of causing death the verdict of the jury must be for the plaintiff.  '(*Granted.*)

*Plaintiff's 4th Prayer.*—That where it appears that death was the result of accident or suicide, and there is no evidence to show which was the cause, or where from all the evidence the cause of death may be equally referred to either accident or design, the presumption of law is that the death was accidental. (*Granted.*)

*Defendant's 1st Prayer* related to the legal sufficiency of the plaintiff's evidence and was rejected.

*Defendant's 2nd Prayer.*—If the jury shall believe from all the evidence that Harry Cecil committed suicide some time between the evening of Sunday, April 22nd, 1906, and Monday morning, April 23rd, 1906, then the verdict of the jury must be for the defendant. (*Granted.*)

The cause was argued before BOYD, C. J., BRISCOE; PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*H. Dorsey Etchison*, for the appellant.

The defendant's first prayer asked the Court to instruct the jury that there was no legally sufficient evidence under which the plaintiff could recover, and the verdict of the jury must therefore be for the defendant.  In support of the theory involved, in thus taking the case from the jury see *Bigelow* v. *Berkshire Life Ins. Co.*, 93 U. S. 619; *Connecticut Life Ins. Co.* v. *Akins*, 150 U. S. 148; *Renes* v. *Northwestern Mut. Relief Asso.*, 100 Wis. 266; *Smith* v. *National Benefit Soc.*, 123 N. Y. 85; *Agen* v. *Met. Life Ins. Co.*, 80 N. W. Rep. 1020; *Cornfield* v. *Supreme Lodge*, 72 Missouri Appeals, 604; *Pagett* v. *Conn. Mut. Life*, 55 N. Y. Appeal Div. 628.

If Cecil had killed himself with a deadly weapon, under the circumstances narrated in the record the defendants would have no case. A man may kill himself in one hundred different ways, with a gun or pistol, and can do so accident-

ally, but I submit that a man can kill himself only in one way by the administration of poison, and that is by taking it through the mouth, but there are different kinds of poison; a man might take chloral, laudanum, sulphuric acid or other poisons that are not obnoxious to the taste accidentally, but I submit that under no possible circumstances could a man accidentally take a dose of carbolic acid. In this particular, this case is different from all other poison cases. The very nature of the drug is of such character that immediately upon its touching the mouth it would be a warning either to a sane or insane person to desist from further permitting it to attack the throat.

How could there under the facts in this case be any rational inference other than that the death was due to design. Right here may I ask, why did Harry Cecil conceal his identity when he bought the drug, and gave his name as Henry Johnson? Why did he give the wrong address? Why did he say to the druggist that he wanted it for an antiseptic wash? His name was not Henry Johnson, he did not live where he said he did, he did not attempt to use it as an antiseptic wash ten to fifteen drops in water, because according to the record there was no water in the room when he was found, only the empty bottle. Why did he remove the label of Phillip Laddon from the bottle? These are only questions which reflect upon his conduct and that conduct shows that he had some design to take his own life.

The defendant is required to overcome the presumption of the law that Harry Cecil died accidentally by a preponderance of evidence. Where is there any evidence in this case at all of accident? Can any rational mind draw the conclusion that a man would drink carbolic acid, and one-half ounce of it in its raw state sufficient to kill a dozen men, out of a bottle with a small aperture without being warned to desist as soon as a single drop of it touched his tongue that would set his throat on fire.

If no rational inference could be drawn that he could possibly accidentally take it the only other inference to be drawn is that it was done by design.

Md.] .　　　　　　Argument of Counsel.

It is for the Court, and this Court to say from the evidence whether the accident theory is the conclusion of an intelligent mind. If it is not the right conclusion, this Court should say so, just as the Court said in *Agen* v. *Met. Life Ins. Co.*, 105 Wis. 217, that the accident theory is a rebuttable presumption and yields to physical facts clearly inconsistent with it.

No circumstances are here to support the presumption of accident that is none raising any reason. All the evidence in this case goes to show that it was a case of suicide. It is well settled that where the reasonable probabilities from the evidence all point to suicide as the cause of death, so as to establish in the light of reason and common sense with such certainty as to leave no room for reasonable controversy on the subject, the question is one of law for the Court. 25 *Cyc.*, 951.

The Court did not decide upon the sufficiency of the death proofs as offered, as it should have done, but ruled the death proofs out altogether. *Mutual Life Ins. Co.* v. *Stibbe*, 46 Md. 313; *Insurance Co.* v. *Doll*, 35 Md. 102.

It was impossible for the defendant's attorney to forestall under the cirsumstances the action of the Court. It had no time to prove the signature of the plaintiff in the affidavit contained in said death proofs, or to lay the necessary foundation in a case of this kind in order to make the evidence admissible. The statements of the beneficiary are admissible against him as admissions on his part of the facts therein stated. *Mutual Benefit Life Ins. Co.* v. *Newton*, 22 Wall. U. S. 32; *Mutual Benefit Life Ins. Co.* v. *Higginbothan*, 95 U. S. 380; *Modern Woodmen of American* v. *Van Wald*, 6 Kan. Appeals, 231; *Spencer* v. *Citizens Asso.*, 142 N. Y. 504; *Haman* v. *Connecticut Mut. Life Ins. Co.*, 150 N. Y. 526.

*Wm. P. Maulsby, Jr.*, and *George A. Pearre, Jr.*, for the appellee.

After the admissions as to the death proofs by appellant, the Court would not have allowed the appellee to have offered in evidence the death proofs; because the facts which they would prove, were already admitted, and hence by offering

them nothing would be proved, and only the time of the Court unnecessarily consumed, the very reason for the exclusion of irrelevant testimony. The purpose of offering the *Death Proofs,* is to show to the *Court* that the beneficiary has complied with the requirements of the policy; they are a condition precedent, are *for the Court* and not for the jury. Our Court of Appeals in the *Nicklas case*, 88 Md. 474, said—Whatever may have been the ruling upon this question in other States, this Court has held in the case of *Fidelity Life Association* v. *Ficklin*, 74 Md. 183, that while it is necessary for the plaintiff to offer in evidence the proofs of death, for the purpose of showing that the requirements of the policy had been complied with, it was held that, *they were not admissible for any other purpose.* *Cook* v. *Insurance Co.*, 84 Mich. 21; *Brashears case*, 89 Md. 654; *Stibbe's case*, 46 Md. 302; *Doll's case*, 35 Md. 103.

The only question the jury had to decide was whether or not Harry Cecil committed suicide, and the burden of proving that fact was upon the appellant. *Nicklas case*, 88 Md. 470; *Mallory* v. *Travellers Ins. Co.*, 47 N. Y. 52; *Travellers Ins. Co.* v. *McConkey*, 127 U. S. 661; *Brashears case*, 89 Md. 624; *Richards on Insurance*, p. 209.

The appellant in meeting this burden, had to overcome the *presumption of law*, that Harry Cecil came to his death from natural causes. In the Brashears case, the Court said, The presumption of law is that the death of the insured was due to natural causes, and the burden of proof is upon the defendant, to show by a preponderance of testimony that it was not the result of accident. *Nicklas case*, 88 Md. 470; *Bliss on Life Insurance*, sec. 337; *McConkey's case*, 127 U. S. 661. *Mallory's case*, 47 N. Y. 54.

Hence it must be noted that with these burdens to be met and overcome by a preponderance of the testimony on the part of the appellant, the appellant asks the Court to say, *as a matter of law*, that appellant had met and discharged these burdens. We submit that whether or not Harry Cecil committed suicide was a question of fact to be passed upon by the jury

in this case.    It is for the Court to decide as to the *sufficiency in law* of the evidence, but its *sufficiency in fact* is for the exclusive cognizance of the Jury.    *Poe's Prac.*, vol. 2, sec. 294; *Clark* v. *Detrick*, 31 Md. 148.

Now what is the testimony upon which appellant relies to prove suicide?    He relies upon the testimony of Philip Laddon (the Druggist) alone.    It is important to note, that Laddon was a German Jew, who could neither speak nor understand the English language but poorly.    The jury observed Laddon's conduct on the stand, they heard his testimony, and they heard all the other testimony in the case, they passed upon the comparative weight of the evidence (which is for them exclusively and not for the Court, *Baltimore Elev. Co.* v. *Neal*, 65 Md. 459) and found a verdict for the appellee.

The plaintiff's third and fourth prayers are the same as the plaintiff's first and fourth prayers passed upon and sustained by this Court in the Nicklas case, with the exception that the cause of death is different.    But we understand that appellant contends that there is a difference between death by shooting and death by poison.    We submit that the presumption of accident remains, whatever may be the cause of death.    *Mutual Life Ins. Co.* v. *Wiswell*, 35 L. R. A. 259 (opium poison); *Mallory* v. *Travellers Ins. Co.*, 47 N. Y. 52 (death by drowning); *Firemens Life Ins. Co.* v. *Edwards*, 20 Fed. Rep. 662 (Prussic acid poisoning.)

BURKE, J., delivered the opinion of the Court.

On the 31st day of August, 1905, the Modern Woodmen of America, a beneficial society, incorporated under the laws of the State of Illinois, issued a benefit certificate to Harry Cecil, a member of Poolesville Camp No. 1159, located in Montgomery County, for the sum of one thousand dollars, payable upon his death to Julia M. Cecil, his mother.    On April 23rd, 1906, Harry Cecil was found dead in the room of his boarding house in Washington, D. C., and the proof shows that his death was caused by his drinking carbolic acid. The society refused to pay the insurance to Mrs. Cecil, the

mother, and she brought suit upon the certificate in the Circuit Court for Frederick County, and from a judgment entered in her favor the defendant has appealed.

At the trial the plaintiff offered in evidence the certificate issued by the defendant, and its counsel admitted the death of the insured, and further admitted that the defendant had due notice of his death, and that the death proofs had been submitted to it in proper form as required by the laws of the order, and also admitted that Harry Cecil was a member of the order and in good standing. Thereupon the plaintiff closed her case.

There is a provision in the certificate which declares that the same shall be null and void and of no effect, and that all moneys which may have been paid, and all rights and benefits which may have accrued on account of the certificate shall be absolutely forfeited, if the insured shall within three years after becoming a beneficial member of the society die by his own hand, whether sane or insane, except by accident. The single controverted question at the trial was: Did Harry Cecil designedly take his own life? To show that he did the defendant offered in evidence the testimony of Philip Laddon, a druggist, residing in the District of Columbia; Dr. J. Ramsey Nevitt, the coroner; and William Shamberger, the morgue keeper of the District, and Ira D. Philips, a friend and room mate of the deceased. After the testimony of these witnesses had been taken, the defendant's counsel, holding in his hand and exhibiting to the Court a large bundle of papers fastened together, said: "I now offer in evidence the final death proofs in this case." To this offer, *as made*, the plaintiff objected, and the Court then inquired of the defendant's attorney for what purpose he offered the proofs of death, and to this inquiry counsel replied: "The death proofs are always admissible, and I now offer the same in evidence for the general purposes of the case, and for what they are worth." The Court sustained the objection and excluded the proffered testimony. This ruling is the one complained of in the first exception.

There was no error in this ruling. Among the papers pro-

posed to be offered in evidence was a printed clipping, presumably from some newspaper, giving an account of the death of Harry Cecil, and stating that he had committed suicide because of lack of funds and employment. Upon no principle of evidence could this have been given to the jury. The proofs of death were not admissible because the defendant had admitted that the proofs of death had been furnished as required by the laws of the order, and to have permitted these proofs, which cover thirteen pages of the printed record, to have been introduced in evidence would have been a useless consumption of the time of the Court. The affidavit of Mrs. Cecil, in which she stated that the insured had committed suicide, was properly admissible, and would no doubt have been admitted in evidence had the attention of the Court been called to it; but offered generally in connection with all the other papers it was rightfully excluded. This was the only paper, among the many which the defendant proposed to offer, that was admissible in view of the admissions which had been made, and if the counsel desired to offer that paper in evidence he should have called the Court's attention to it, and the Court would have admitted it, not as a part of the proof of loss, but as a declaration by the plaintiff against her own interest. *Mutual Life Insurance* v. *Stibbe*, 46 Md. 312; *Traveller's Insurance Co.* v. *Nicklas*, 88 Md. 474; *Fidelity Mutual Life Ins. Co.* v. *Ficklin*, 74 Md. 183.

After the Court had excluded the proofs of death as offered, the defendant introduced and read to the jury the by-laws of the order which provided that the certificate shall be null and void, if the insured within three years after becoming a member die by his own hand, except by accident. The defendant then rested its case, and the plaintiff called four witnesses in rebuttal.

At the conclusion of the whole case the plaintiff offered four prayers for instructions to the jury, and the defendant submitted two. The Court granted the plaintiff's prayers, and granted the defendant's second prayer and refused its first. The ruling of the Court upon the prayers constitutes the sec-

ond bill of exceptions. The defendant filed special exceptions to the plaintiff's third and fourth prayers; but the Court did not rule upon these exceptions, and, therefore, the questions they were intended to raise are not before us, as this Court can only pass upon such questions as were raised and decided in the lower Court.

The legal propositions announced in the plaintiff's granted prayers were conceded to be correct, and they are fully supported by the cases of the *Travellers Insurance Company* v. *Nicklas*, 88 Md. 470, *and the Royal Arcanum* v. *Brashears*, 89 Md. 624, and were properly granted.

The defendant's first prayer, which was refused, asked the Court to direct a verdict for the defendant, because there was no legally sufficient evidence in the case under which the plaintiff could recover. It was an application to the Court to decide, as matter of law, that the insured had designedly taken his own life. It was conceded at the hearing that the plaintiff had made out a *prima facie* case; but it was contended that the evidence offered by the defendant, which is embraced in the first exception, shows conclusively that the insured intentionally committed suicide. There is nothing in the evidence contained in the second bill of exceptions, which was taken to the ruling on the prayers, to show that Harry Cecil wilfully committed suicide, and as the exceptions are entirely separate and disconnected, the question raised by this prayer must be determined upon the evidence embraced in that exception alone, and as it contains no evidence to rebut the legal presumption that the deceased did not take his own life the Court could not, no matter what it might find the fact to be, reverse the judgment. This Court said in *Cooke* v. *Cooke, Executor*, 29 Md. 552, that: "It is, no doubt, well settled that, unless bills of exception are connected by express reference to each other, or by the use of words which fairly import such connection, they will be considered as separate and distinct, and the Court will look to and consider only the evidence set out in each exception." In 2 *Poe Pl. & Pr.*, sec. 320, it is stated: "Where a bill of exceptions brings up only the prayers offered

by the exceptant and refused, without a statement of the evidence upon which they are based, the Court will be unable to consider them properly, unless the evidence is found in another exception previously taken, to which reference may legitimately be made."

In this case there is no connection whatever between the two exceptions. After the first exception had been taken, the record shows as follows.

"*Defendant's second bill of exceptions.*

To further maintain its issues, the defendant offered in evidence the 65th section of the by-laws of the order, which was read to the jury."

In the view we have taken of the case it becomes unnecessary to discuss the evidence. We have, however, carefully considered it, and are of the opinion that the Court would not have been justified in withdrawing the case from the jury.

*Judgment affirmed with costs above and below.*