# THE MUTUAL FIRE INSURANCE COMPANY OF MONTGOMERY COUNTY *vs.* HOWARD F. RITTER.

*Action on Mutual Fire Insurance Policy—Evidence—Cross-Examination—Competency of Evidence as to Course of Business.*

The declaration in an action on a policy of fire insurance alleged that the defendant by its policy bearing a certain number did insure the plaintiff for $595. The plaintiff offered in evidence a policy bearing that number by which the defendant insured the plaintiff to the amount of $595. *Held,* that there is no substantial variance between the allegations of the declaration and the proof offered, and that the policy is admissible in evidence under the declaration.

In an action on a fire insurance policy, the preliminary proofs of loss furnished to the insurer by the plaintiff are not admissible in evidence generally, or for the purpose of showing the fact or extent of plaintiff's loss.

Where the defendant pleads *non est factum* in an action on a policy of insurance, letters from the defendant's secretary containing admissions to the effect that the plaintiff held a certain policy are competent evidence to show that the policy sued on was the act and deed of the defendant.

The plaintiff in such action may offer evidence to show that his premium note was not returned to him after the defendant had refused to pay the loss claimed.

When a letter has been put in evidence, the writer of it may be allowed to state why it was written.

The rule limiting the cross-examination of a witness to the general facts stated on direct examination must not be construed so as to defeat the real object of the cross-examination, which is to elicit all the facts of a transaction which had been only partly explained, and much latitude is left to the discretion of the trial judge as to the proper limits of the cross-examina ·

tion. In this case it does not appear that the discretion was abused.

When the matter in dispute is whether or not a certain thing was done, evidence is not admissible to show what should have been done, or what was customarily done, under similar circumstances.

So when the question is whether a certain insurance premium had been paid at a certain time or not, an agent of the insurer cannot be asked this question, "What course is pursued when a person comes into your office to pay insurance? How do you proceed? If you make any entries, tell how you make them, and if you do anything with the cash, what do you do with it, and so forth?"

When the question is whether plaintiff's wife had paid his insurance premium or not, evidence as to the existence of friendly or unfriendly relations between the plaintiff and his wife is not competent.

*Decided April 1st, 1910.*

Appeal from the Circuit Court for Howard County (FOR-SYTHE, J.).

The prayers mentioned in the opinion of the Court are as follows:

*Plaintiff's Prayers.*

(1) The plaintiff prays the Court to instruct the jury that the undisputed evidence in this case is that the policy of insurance declared in this case is the policy of the defendant company and that the same has been properly executed by said company and delivered to the plaintiff. (*Conceded.*)

(2) That if the jury believe from the evidence that on or about January 2, 1906, a witness, Matilda V. Ritter, acting for the plaintiff, called at the office of the collecting agent of the defendant company, Wilson and Company, at Catonsville, Maryland, and tendered the premium on the policy sued on in this case and that the said agent, or his clerk

received the money so tendered for the purpose aforesaid that then the plaintiff is entitled to recover, irrespective of the fact as to whether said Matilda V. Ritter received a receipt or not.    (*Conceded.*)

(3) That if the jury believe from the evidence in this case that the plaintiff suffered a loss by fire on or about May 13, 1906, and that the chattels consumed in said fire were among those enumerated in the policy sued on in this case, as enumerated by said policy, that then the plaintiff is entitled to recover such loss, provided the jury further find the facts submitted in the plaintiff's second prayer. (*Conceded.*)

(4) That if the jury find for the plaintiff in this case then it is within their discretion whether to allow the plaintiff interest at the rate of six per cent. per annum, which interest should start to run after ninety days from the date of notice and proof of loss.   (*Conceded.*)

## *Defendant's Prayers.*

(1) The defendant by its counsel, prays the Court to instruct the jury that the plaintiff in this case cannot recover unless the jury believe from the evidence that the interest for the year 1906 on the premium note of Howard F. Ritter, given in connection with the issuance of the policy sued on in this case was paid by him or some person for him, prior to the fire, which occurred May 13, 1906, and that the burden of proof is upon the plaintiff to establish by the preponderance of evidence that the payment was so made.   (*Granted.*)

(2) The defendant by its counsel prays the Court to instruct the jury that if they find for the plaintiff upon the issues joined the measure of damages will be the actual value at the time of the loss of the various items of personal property included in the policy, in no case exceeding the value of such items as set out in the policy or the application accompanying the policy and made a portion of the same, and interest, in their discretion, on such sum at six per cent. per annum from ninety days after the occurrence of the fire. (*Conceded.*)

(4) The defendant by its counsel prays the Court to instruct the jury that the burden of establishing the payment, prior to the fire of the interest for the year 1906 on the premium note of Howard F. Ritter, given as the basis for the issuance by the defendant company to said Howard F. Ritter of policy No. 26736 by a preponderance of the testimony satisfactory to the jury, is upon the plaintiff, and if the testimony in this case is such as to leave the minds of the jury evenly balanced as to whether or not the payment of interest was made before the fire, their verdict should then be for the defendant.   (*Conceded.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*R. E. L. Smith* and *C. W. Prettyman,* for the appellant.

*Lee S. Meyer* and *David Ash* (with whom was *Edward M. Hammond* on the brief), for the appellee.

PEARCE, J., delivered the opinion of the Court.

This action was brought by Howard F. Ritter against the Mutual Fire Insurance Company of Montgomery County, Maryland, to recover upon a policy of insurance issued by the latter for the loss by fire of certain personal property described therein, and which was situated upon a farm in Baltimore County, Maryland, belonging to Matilda V. Ritter the wife of the plaintiff, who resided with him on said farm. Mrs. Ritter also held a policy of insurance issued by the same company for the protection of the buildings upon her said farm, and on May 13th, 1906, a fire occurred on the premises resulting in the destruction of certain of the insured buildings upon Mrs. Ritter's farm, and of certain of the chattel property of the plaintiff insured in his policy, and described in the proof of loss furnished by him, the aggregate amount of such loss being placed at $515.00.   The an-

nual payment upon both these policies, as upon all policies of that company, were payable within thirty days after the first Monday in January in each year, and in default of such payment, the policies of defaulting members are suspended and are declared not binding on the company until such interest is paid.

The amended declaration charged that in consideration of the membership of the plaintiff in the defendant company, and of the interest on the plaintiff's premium note for the sum of $60 at a rate to be fixed by the defendant not exceeding six per cent. per annum, the defendant executed and delivered to the plaintiff its policy of insurance "whereby it insured the plaintiff, his executors, administrators or assigns, agreeably to the terms and conditions of the said company, *for five hundred and ninety-five dollars,* against all loss or damage," etc.; that the fire occurred as stated herein, and that a part of the chattels insured under said policy were totally destroyed by fire, to the sum of five hundred and fifteen dollars; that the plaintiff furnished the defendant full proof of said loss and performed all of the conditions on his part, and that the policy was never cancelled, nor was the loss ever paid, though the policy was in full force at the time the loss was sustained.

The defendant pleaded four pleas; the first, second and third, averring in varying language that the policy was suspended at the time the loss occurred, and not binding upon the company because of the plaintiff's failure to pay the interest due for the year 1906 on his premium note, within thirty days after the first Monday in January, 1906; and the fourth plea was *non est factum.* The plaintiff replied to the first, second and third pleas that he did pay said interest on his premium note within thirty days after the first Monday in January, 1906, and that the said policy was not suspended at the time the loss occurred, and was then binding on the company, and by way of replication to the fourth plea of *non est factum,* the plaintiff joined issue thereon, and the

defendant then joined issue on the plaintiff's replications to the defendant's first, second and third pleas.

No evidence was offered to support the plea of *non est factum,* and the defendant conceded all the plaintiff's pray-ers (which will be set out, with the defendant's prayers, by the Reporter), the first prayer of the plaintiff instructing the jury that according to the undisputed evidence in the case the policy declared on was the deed of the defendant properly executed and delivered to the plaintiff. The de-fendant's first prayer was granted, and its other two prayers, marked second and fourth, were conceded. There being no exceptions to the ruling on the prayers, these need not be further considered.

It thus appears from the pleadings and all the evidence that the only issue of fact in the case is whether the interest upon the plaintiff's premium note was paid within thirty days from the first Monday of January, 1906. Nineteen exceptions were taken to rulings on the evidence, of which the fourteenth was abandoned at the argument in this Court, but the others remain for consideration.

The interest upon plaintiff's premium note for the year 1906 was $2.47, and that upon Mrs. Ritter's premium note for the same year was $4.43, the two amounts aggregating $6.90 and both were payable within thirty days after the first Monday in January, 1906, to the company's agents, John S. Wilson & Co., at their place of business at Catonsville, Bal-timore County. The secretary of the company, Mr. Far-quhar, testified that a receipt for each policy is sent to the agent authorized to receive the annual interest thereon, and that there is never made more than one receipt in each year for any one policy, and these are sent out about the last of December, and the agents are required to account for and remit all such collections sometime in February, and that such receipts, both for the plaintiff's interest, and for Mrs. Ritter's, were sent to John S. Wilson & Co., for the year 1906, before January 1st, 1906; that each receipt has a stub attached showing the name of the insured, the number of the

policy, the amount of interest due, and the place where pay-
able, and that upon payment the agent delivers the receipt
to the insured, and returns to the company the stub, after
filling in date of payment; but if not paid the agent returns
both stub and receipt. He further testified that John S. Wil-
son returned to the company Mrs. Ritter's stub for 1906,
but not her receipt, and accounted for her interest, but did
not account for plaintiff's interest, and did return both his
receipt and stub, and the papers so returned were offered and
admitted in evidence, the following being copies thereof:

### FIRST PAPER.

|                    |                                    |
|--------------------|------------------------------------|
|                    | Policy 26736        Receipt attached. |
| Stub.              | Received of Howard F. Ritter the   |
|                    | sum of $2.47 for annual interest due |
|                    | on premium note given by the above |
| Howard F. Ritter   | named and held by the Mutual Fire  |
|                    | Insurance Company of Montgomery    |
| Policy No. 26736   | County, Md., and payable in advance |
|                    | before the expiration of the month of |
| Amount due $2.47   | January, 1906, continuing said insur- |
|                    | ance for the year 1906, subject to the |
| Payable to Catons. | terms and conditions of the policy. |
|                    | Paid 1906.                         |
| Paid        1906   | ALLAN FARQUHAR, Treasurer.         |

### SECOND PAPER.

Stub.
Matilda V. Ritter.
Policy No. 39302
Amount due $4.43
Payable to Catons.
Paid, Jan. 2, 1906.

Mr. Farquhar also testified that either he or B. D. Palmer
received all interest paid on premium notes, and that he re-
ceived no interest for plaintiff for 1906, though he could
not say of his own knowledge that none was paid to John S.

Wilson & Co. for plaintiff, but that payment of plaintiff's loss was refused because the company's officers believed his interest for 1906 had never been paid, while Mrs. Ritter's loss was paid, because they knew her interest for 1906 had been paid. Mr. Palmer also testified he had received no interest for plaintiff for 1906. Mrs. Ritter testified that on January 2nd, 1906, she went to the office of John S. Wilson & Co. to pay her interest as she had been accustomed to do for 30 years, and also to pay plaintiff's interest, at his request, and took with her the receipts for the interest on both policies for 1905, and that plaintiff gave her $10 out of which to pay the interest. She said she was waited on by one of the clerks, whom she could not identify, and that she said to him, "I came to pay my policies," and handed him the ten dollar bill given her, together with the two receipts for 1905, and the clerk gave her two one dollar bills and some change out of the $10; that she did not count the change, and did not know whether it was as much as a dollar or not, that she did not remember what the clerk said, nor whether there were three or four receipts handed her with the change, but she produced when testifying, the two receipts for 1905; that upon her return home she placed all the papers she received from·the clerk in a box in a room upstairs, and when the fire occurred the box with other things was thrown out in the road and was recovered a few days later; that after the fire she found the receipt for her own interest for 1906 but could not find the receipt for plaintiff's interest, but that she positively knew she had paid the interest on both policies.

Howard B. Wilson, a member of the firm of John S. Wilson & Co., in January, 1906, identified a book shown him, as the book in which the firm entered all money received by it for interest on policies issued by defendant, and that an entry therein of $4.43 paid January 2nd, 1906, by Mrs. Ritter was in his handwriting, though he did not remember the payment nor the making of the entry, but that *"he knew from the course of business of John S. Wilson & Co., and the*

entry in the book, that the entry of $4.43 Matilda V. Ritter," was coincident with the payment of the money, and that he can tell from the entry in the book and said course of business how much money Mrs. Ritter paid him on January 2, 1906, on account of insurance premium." He also testified that the entry, "January 2nd, 1906," on the stub of Mrs. Ritter's receipt for 1906 returned to the company was in his handwriting. He also testified that from the course of business in their office and the entry in the book above mentioned and on the stub of Mrs. Ritter's receipt that she did not pay him on January 2nd, 1906, the interest then due on plaintiff's policy.

Mr. Tschiffely, defendant's adjuster, testified that when he went to the Ritter farm to adjust Mrs. Ritter's loss, plaintiff asked him what they were going to do about his loss, and that he replied that the company was not liable for that because his interest had not been paid; that witness asked Mrs. Ritter what amount she had paid, and she said four dollars and some cents, and he told her that was just enough to pay hers; that she then asked how much she would have to pay to cover both, and he told her $6.90, and she then said: "I gave them a ten dollar bill, and they gave me $3.00 and some change that he suggested to plaintiff that they telephone Mr. Wilson about it, and that on the way to the telephone in a neighbor's house, and out of the presence of Mrs. Ritter, plaintiff said: "It aint worth while to call up Mr. Wilson; I know that insurance has not been paid; my wife and I don't get along well together, and she did this to spite me; she did it once before." He also testified to other matters tending to discredit the testimony of Mr. and Mrs. Ritter but it is unnecessary to encumber this opinion with any reference to them further than to say that both Mr. and Mrs. Ritter were called in rebuttal and both positively denied making any of the statements offered by Mr. Tschiffely to discredit them, and plaintiff positively denied making to Mr. Tschiffely the statement above set out that he knew his interest had not been paid, that he and his wife did not get along well and

she did that to spite him. All this conflicting evidence went to the jury for its consideration.

The first exception was to the introduction in evidence, "of the policy for the reason as alleged by the defendant," that it was neither *in haec verba,* nor in legal effect the contract set out in the declaration. The language of the policy is "do insure the said H. F. Ritter agreeably to the terms and conditions of the said company hereunto annexed, *to the amount of* $595," while the language of the declaration is "did insure said plaintiff agreeably to the terms and conditions of said company *for* five hundred and ninety-five dollars."

In determining questions of alleged variance between the allegations and the proof, it is essential to keep in mind the reason and object of the rule that the *allegcta* and the *probata* must correspond, and this reason and object is stated thus in 22 *Enc. of Pl. & Pr.,* page 537: "This rule is intended to answer the double purpose of distinctly and specifically advising the opposite party of what he is called upon to answer, so as to enable him properly to make out his case and to prevent being taken by surprise in the testimony at the trial, and of preserving an unerring record of the cause of action as a protection against another proceeding based upon the same cause; and however harsh and technical may have been the application of this rule at common law, and in earlier times, it is now undeniably true that only substantial and material variances between the pleadings and the proof will be regarded." 22 *Enc. Pl. & Pr.,* 541. This Court said in *Cook* v. *Gill,* 83 Md. 193: "The strict rule that once prevailed has been very much relaxed for the purposes of justice, even in actions *ex contractu,* where the rule is more rigidly enforced than in actions *ex delicto* and although the *probata* must still conform to the *allegata,* it is sufficient if the substance of the issue be proved. * * * The terms of the contract sued on must be substantially proven as alleged so as not to take the defendant by surprise, and also to protect him from another suit on the same cause of action."

Tested by such construction of the rule we cannot discover

any error in the ruling of the Court admitting the policy in evidence. The undisputed testimony is that the plaintiff held but one policy in the defendant company. The declaration alleges that the policy sued on is No. 26736, and the policy offered in evidence is No. 26736. The receipt and stub offered by the defendant and admitted, shows that the policy was No. 26736 and was issued to the plaintiff and the defendant must be taken to know the terms and conditions of its own policies framed under its directions not for a single individual, but for all its members, embracing many thousand persons as shown by the number of this policy. How then could it be taken by surprise as to what it is called on to answer, or how to prepare the defense? It had only to turn to its books to see what were the terms of policy No. 26736 and to have full and exact information as to its liability for the plaintiff's claim. Nor could it be subjected to a second recovery for the same cause of action.

The declaration stated that policy No. 26736 was issued May 25th, 1894, and the policy offered was issued on that day. The declaration stated the fire which caused the loss occurred on May 13th, 1906, and the undisputed evidence shows that was true. The policy set out in detail the articles insured, and the insured value of each article. The plaintiff could not split up the cause of action, and therefore a recovery in that suit for any amount would bar a future recovery for any article destroyed or damaged by that fire, though inadvertently not claimed nor allowed in that suit.

The defendant would have an "unerring record" in that as a complete protection against any other recovery upon policy No. 26736.

We do not consider it necessary to further discuss this exception, though it would not be difficult in our opinion, apart from the reasons we have given, to show that under the language of this policy even a technical variance could only be predicated upon strained verbal refinement.

The 6th exception was to the admission in evidence of the written application for the policy of insurance, and as the

policy declares the application to be a part of the policy, it follows from what we have just said that there was no error in admitting it.

The 9th exception was to the admission in evidence of the proof of loss. In this we think there was error. In *Insurance Company* v. *Doll,* 35 Md., this Court through Judge ALVEY, said: "Preliminary proofs as such are not *per se* evidence to the jury of the plaintiff's loss. They consist of the *ex parte* statements of the plaintiff himself, and he is not allowed by any rule of evidence, such facility of furnishing evidence in his own behalf. * * * If, in any case it be necessary to lay the preliminary proofs before the jury, they should be cautioned against considering them as evidence of the *fact or extent* of the plaintiff's loss. But in this case such proofs were allowed to be read in evidence generally and without any restriction the jury being left to consider them as they thought proper." The same ruling was made in *Modern Woodmen* v. *Cecil,* 108 Md. 365. So in the case before us the proof of loss was admitted generally and without restriction or caution of any kind. If we could clearly see that no injury was worked thereby to the defendant, we should not reverse for that error, but we think the defendant's counsel have made it clear in their brief, that there was concurrence of error and injury.

The proof of loss upon the items claimed therein, upon the basis of valuation prescribed by the policy aggregated $515. The verdict rendered on September 25th, 1909, was for $610.50. Under the appellant's second prayer, the jury were instructed that the measure of damages would be the actual value at the time of the loss, of the several items in the policy not exceeding the values set out in the policy, with interest in their discretion at six per cent. from ninety days after the fire. Calculating interest on $515 from August 13th, 1906. ninety days after the date of the fire, to September 25th, 1909, the date of the verdict, and adding it to the $515 itemized in the proof of loss, the result is $610.50, the exact amount of the verdict, thus making clear that the verdict

was founded on the proof of loss.   Now if the testimony of
the plaintiff delivered at the trial when subject to cross-ex-
amination, agreed exactly as to the items of loss, with the
proof of loss, the error would not be reversible error, nor
would it be, if the amount of the verdict were less than the
insured value of the items of loss proved by the plaintiff at
the trial; but an examination of his oral testimony shows
that allowing every item of loss *then proved by him* at the
value named in the policy, and also allowing for small
amounts of seed corn, timothy seed and garden seed, valued
by him at $17.00 and classed as grain, which was an insured
item, and also allowing $10 for straw, classed as hay, and
$18.00 for 4½ tons of hay at his estimate of value, the total
loss would be $362 instead of $515, a difference of $153.

We cannot treat such an error, directly due to the admis-
sion of the proof of loss, as harmless error, since upon no
other basis than the proof of loss could the verdict that was
rendered have been founded.

The 2nd, 3rd, 4th and 5th exceptions go to the admission
in evidence of certain letters of the appellant's secretary,
Mr. Farquhar, four in number, one addressed to plaintiff,
two to Mrs. Ritter, and one of Mr. Meyer, plaintiff's attor-
ney at that time.   Each of these letters had special reference
to the plaintiff's loss in this case, and each of them contained
an explicit admission that the plaintiff held policy No.
26736 in that company and under the plea of *non est factum*
we think they were properly admitted for the purpose of
showing that the policy sued on was the deed of the defend-
ant.   These letters were objected to generally as tending to
prove nothing material to the issues in the case, and if any
restriction was desired by defendant, it should have been
asked for on some special ground, that a proper direction
might be given as to the purpose for which they were ad-
mitted.

We find no error in the seventh exception in allowing plain-
tiff to prove by Mr. Farquhar that his premium note had not
been returned to him after the defendant refused to pay the

loss, because the alleged failure to pay the interest on the policy for 1906 released the company from liability. The jury were entitled to consider that fact in connection with all the other facts in evidence.

There was no error in the eighth exception in allowing Mrs. Ritter to be asked why she wrote the letter of June 8th, 1906, which the defendant offered in evidence. It was held in *Jarrell* v. *Young,* 105 Md. 285, that where evidence has been given of the performance of any act the party performing it may testify as to his motives and intention in doing the act, except in cases where the law imputes a certain intent from the act. Moreover Mrs. Ritter had previously, without objection, given the same precise reason for writing this letter, which she gave in reply to the question objected to, so that even if held error, it would be harmless error.

The 10th, 11th and 12th exceptions involve the same principle and may be considered together. In the tenth the defendant's counsel was not allowed to ask the plaintiff on cross-examination if he and his wife had not discussed the question of the payment of his interest for 1906, before the adjuster called at their house, the plaintiff having, on his examination in chief, given testimony tending to show that his first intimation he had that the payment of his interest was disputed was derived from the adjuster at that time. It will be seen that later in his cross-examination, the plaintiff testified that he and his wife were not discussing that question when the adjuster came and that they had never discussed it, so that if there was error in this exception it was again harmless error. Under the eleventh exception the plaintiff, still under cross-examination, was not allowed to be asked whether his wife, on her return from John S. Wilson & Co. on January 2nd, 1906, had given him a receipt for payment of his interest. He had not been asked anything about a receipt on his direct-examination, nor was Mrs. Ritter asked if she gave him a receipt. She had previously said she put all the papers she received from Wilson & Co. in a box upstairs, and had not given a receipt to him for that

payment. The question was refused upon the ground that it was not proper cross-examination. In the twelfth exception the plaintiff was shown on cross-examination a letter dated June 4th, 1906, addressed to the defendant, referring to the question of the payment of this interest, signed "H. F. Ritter, W.," and he was asked if the signature was his. He replied it was not, and that he knew nothing of it, and had no recollection of authorizing anyone to write such a letter—and that his stepson was named Wiedemeyer but that he was not familiar with his writing. He was then asked if he did not upon a former trial of this case admit on the stand that the letter was his, signed by him or for him at his direction, and an objection to the question was sustained on the ground that it was not proper in cross-examination. In *Black* v. *Bank of Westminister,* 96 Md. 424, we cited *Jones on Evidence,* sec. 821, to the effect that the rule limiting the cross-examination to the general facts stated on the direct examination must not be so construed as to defeat the real object of the cross-examination which is to elicit the whole truth of transactions only partly explained, and that in such cases much must be left to the discretion of the presiding judge, and we are not prepared to say that the trial judge who observed the course of the whole trial abused the discretion committed to him in ruling upon these questions.

In the thirteenth exception, the witness Wiedemeyer was asked if he had a conversation with Mr. Crosby, an agent of defendant, about the alleged non-payment of plaintiff's interest, and an objection to this question was sustained, but the record shows nevertheless that the witness did then answer the question and gave a coversation with Crosby on that subject. That exception therefore is of no importance.

The fourteenth exception was abandoned.

The fifteenth exception was to the refusal to allow Mr. Freund a member of the firm of Wilson & Co: to answer this question: "What course is pursued when a person comes into your office to pay insurance; how do you proceed? If you make any entries tell how you make them—and if you do

anything with the cash, what do you do with it, etc.," It can hardly be necessary to say that we cannot sanction the proof of a disputed question as to·what *was done,* by proof of *what should have been done* or was customarily done in a given case.

In the sixteenth exception Howard B. Wilson, a member of the firm of Wilson & Co., in 1906 having said that he was familiar with the course of business as to collection of these payments upon policies was asked to state that course in detail, and he was not allowed to answer.

In the seventeenth exception the same witness was not allowed to answer the following. question, "are you able to say from your knowledge of the course of business in your office at that time whether the entry made by you (being an entry by witness of the payment of $4.43 January 2nd, 1906, as paid by Mrs. Ritter on her policy) covers all the money paid you by Mrs. Ritter on that occasion?"

In the eighteenth exception the question to the same witness which was refused was, "can you say from the course of business in your office and the entry on this book which is in evidence (being the same entry referred to in the previous question) and from what you· have testified to as its being made at the same time the payment was made, how much money Mrs. Ritter paid you on January 2nd, 1906?"

What we have said of the fifteenth exception is applicable to the 16th, 17th and 18th, and would seem to be conclusive of the correctness of these rulings, but this witness had stated just before the 17th exception was taken, as we have heretofore shown from the record, that he could tell from the course of business and from the entry referred to as made by him how much money Mrs. Ritter paid him on January 2nd, 1906; and he had stated just before the 19th exception was taken that he could say from the course of business and from the entry mentioned whether Mrs. Ritter paid him on January 2nd, 1906, the interest on plaintiff's policy then due and that she did not pay it.

The defendant thus had every benefit that it could have received if each of these questions had been allowed.

In the nineteenth exception the witness Grenninger was asked whether he knew anything about the domestic relations of the plaintiff and his wife, and whether they had been amicable or otherwise, and this was not allowed. However offered, whether generally, or to confirm the witness Tschuffeley, we should require high authority before admitting testimony of that character in an issue like the present, and no authority has been produced. For the error in the admission of the proof of loss the judgment must be reversed.

> *Judgment reversed with costs to the appellant above and below, and new trial awarded.*