## SMITH *v.* STATE ROADS COMMISSION AND STATE ACCIDENT FUND

[No. 438, September Term, 1964.]

*Decided December 1, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY, MARBURY, OPPENHEIMER and McWILLIAMS, JJ.

*Charles L. Carter, Jr.,* with whom were *O'Connor & Preston, Leroy W. Preston* and *Edwin F. Nikirk* on the brief, for appellant.

*Charles R. Goldsborough, Jr., Special Assistant Attorney,* with whom were *Thomas B. Finan, Attorney General, J. Howard Holzer, Special Assistant Attorney General* and *J. Raymond Buffington, Jr., Special Attorney,* on the brief, for appellees.

McWILLIAMS, J., delivered the opinion of the Court.

On 17 September 1962, within a few minutes of 8:00 p.m., Joseph Leo Smith, an employee of the State Roads Commission, on his way home, drove his pickup truck off of Liberty Road and struck a telephone pole. He sustained injuries which caused his death. A post mortem examination was performed the following morning. In a specimen of blood taken from the heart there was present a concentration of alcohol amounting to 0.27%, indicating intoxication.

Within sixty days the widow (appellant), on behalf of herself and six minor children, presented her claim to the Workmen's Compensation Commission. A hearing was held 16 January 1963 on two issues. Was the deceased in the course of his employment when fatally injured? Was the accident the result of intoxication? The Commission found that the deceased was in the course of his employment and that the accident did not result solely from his intoxication. The employer and its insurer (appellees) noted an appeal to the Baltimore City Court. By agreement, the case was submitted for determination to the court without a jury on the single issue of intoxication. This appeal is from the court's finding that Smith's death resulted solely from his intoxication.

Not since *S. Rosenbloom, Inc. v. Willingham,* 190 Md. 552, 59 A. 2d 311 (1948), have we been asked to consider the language of Sections 15 and 45 of Art. 101 of the Maryland Annotated Code (1957), which provides that where injury or death results solely from the intoxication of the injured employee, no compensation shall be paid. In that case the employee, who during twenty years of married life had never been seen intoxicated by his wife, drove his car off of the Matapeake Ferry at Sandy Point and a few minutes later, after the ferry had left, turned the car around, drove it toward the empty ferry slip and plunged into the Chesapeake Bay. No bottle was found on his person and the police who attempted to revive him by artificial respiration did not detect any odor of alcohol. Judge Henderson, for the Court, said at 558: "No one saw the decedent take a drink. His conduct may have been due to alcohol or something else. * * * The action of the decedent was more suggestive of dementia than intoxication. We cannot say that the trial court

was clearly wrong in finding that causes other than intoxication played a part in the accident." Judge Henderson also reviewed the earlier cases, in all of which the evidence of intoxication was either conflicting, minimal or presented situations demonstrating that intoxication was not the sole cause of the death or injury.

In the case before us the fact of intoxication, if not actually admitted, is established, for the first time in Maryland, by evidence which is both overwhelming and unchallenged. Whether or not the trial judge was clearly erroneous in concluding that the death of Smith resulted solely from his intoxication is the issue raised by appellant's principal contention and the one which we shall consider first.

## I.

The evidence produced at the trial shows that Smith, a resident of New Windsor, was 40 years old, 6 feet tall, and weighed 214 pounds. He commuted daily in his 1948 half-ton Ford pickup truck to White Marsh, a distance of about 55 miles, where the construction of the Northeastern Expressway (now Kennedy Expressway) required his services as an inspector. Because rain fell during most of the last day of his life, Smith and Jack Hartman, another inspector, quit work around 3:30 and went to a tavern nearby. Smith borrowed five dollars from Hartman and they each had two glasses of draft beer and a barbecue sandwich. Hartman recalled that Smith had a few dollars besides the five he had loaned him. They both left around four o'clock, each going his separate way. Where Smith went or what he did thereafter we do not know.

At 8:08 p.m., Officer Robert Borgmann of the Baltimore County Police received a call directing him to investigate an accident on Liberty Road at a point 8.1 miles north of its intersection with the Beltway. Upon arrival he found Smith's severely damaged truck lying on the north shoulder of the road just beyond a shallow curve, slightly banked to the left, and 47 feet beyond a telephone pole with which it had collided. The front wheels and the front axle were about half way between the pole and the truck. The pole itself was fractured about four feet above the ground and the impact had pushed it at ground level about a foot away from its normal position. There were

no marks on the road or the shoulder to indicate skidding or sliding prior to the collision. Although it had stopped raining, the surface of the road was damp. Liberty Road at this point is 25 feet wide with a solid double yellow line in the center. The posted speed limit is 30 miles per hour.

There was no evidence of any mechanical defect in the truck nor any evidence of malfunction in its operation. There was no evidence of blowout or other tire trouble nor of any defect in the road.

Dr. Russell S. Fisher, the Chief Medical Examiner, testified that both the American Medical Association and the National Safety Council take the position that a person with a concentration of 0.15% alcohol in his blood must be considered under the influence of alcohol insofar as motor vehicle operation is concerned.[1] He said the presence of 0.27% would indicate that the person was highly intoxicated and that he would show this in terms of some staggering and a very clear cut and evident decrease in his ability to perform finer motions such as braking or steering an automobile, walking in a straight line, or any activity requiring a high degree of physical coordination, and that many people "pass out" at this level. He also said that the amount of alcohol in Smith's body at the time of the accident amounted to a pint of one hundred proof whiskey and that he did not drink less than that amount because that was the amount that was present.

It was stipulated that in September of 1962 in the eight mile stretch of Liberty Road between the Baltimore Beltway and the scene of the accident there were located six bars, saloons or cocktail lounges. It is conceded that Smith habitually used this part of Liberty Road going to and returning from work.

Appellant claims that there were other factors besides intoxication which contributed to the accident. She cites the fact that the road surface was damp; that it was a dark, cloudy day; that illumination was poor; that it was hazy; that excessive speed is indicated; that the telephone pole was 2 feet east of the shoulder; that this was the fifth of a series of curves;

---

1. In drunken driving prosecutions 0.15% is prima facie evidence that the defendant was under the influence of intoxicating liquor. Md. Code Ann. Art. 35 § 100 (a) (3) (1957 cum supp. 1965).

that some of the curves were double curves. She suggests that any number of things *could* have happened, such as Smith's having been blinded by on-coming lights; swerving to avoid an animal; being run off the road by an on-coming car; sneezing; falling asleep. She argues that something else must have contributed to the accident and that a finding that intoxication was the sole cause is pure speculation.

She might, with equal force, have argued that the road ran north and south instead of east and west, that the sun was not shining, that it was September instead of May. We all know that a road surface is damp after a rain and that tire adhesion may be less precise than it is on a dry road, depending, of course, on the type of tread and its condition, the degree of inflation, the surface of the road, the efficiency of the vehicle's suspension and the judgment and skill of the operator. Every motorist knows that driving on wet, damp roads is one of the facts of life common to all users of the highways. The day was indeed dark and cloudy. But what of that? This accident happened at night. Perhaps illumination was poor at the scene of the accident but must we not assume that Smith, as the law requires, had turned on his headlights? Perhaps it was hazy, but there are many degrees of haziness and there is no evidence here that the haze, if any there was, in any way inhibited visibility. That the pole was 2 feet east of the shoulder has no relevance. The shoulder was 7 feet wide which would put the pole at least 9 feet from the traveled portion of the road. It is not suggested that under the circumstances this amounted to a hazard in any way peculiar to Smith's daily travel. Much is made of the curves and the claim of excessive speed. It is impressed upon us that this is the fifth of a series of curves and that some of them were double curves. What the other four, whether single or double, have to do with this accident has not been demonstrated. The photographs in evidence show a simple, shallow, slightly banked left-hand curve. One could speculate endlessly on what speed would be too great for its successful negotiation.

Appellant argues that the damage to the truck and the nature of Smith's injuries *require* a finding that his speed was "excessive" or, in other words, that he was going too fast to get

safely around the curve. Appellant does not provide us with a definition of "excessive" as used herein. "Excessive speed" is one side of an equation, the other side of which has many factors which can be arranged in infinite combinations. What weight, for instance, should be given to the skill and experience of the driver? Was he a Stirling Moss or a teen-ager just licensed? Was he drunk or sober and if drunk, how drunk? How shall the vehicle be rated? Was it a gran turismo or a candidate for the junk yard? What of the suspension—simple or sophisticated? Were the tires sound, balanced, properly inflated, with adequate treads? Did the vehicle have its engine in the front or in the rear? Was it driven by the front wheels, rear wheels, or all four wheels? What was the condition of the road—concrete, smooth blacktop, rough macadam, covered with oil, mud, sand, snow, ice? What of the weather? Was it light, dark, clear, rainy, foggy?

We know nothing of Smith's driving skill. We know nothing of the condition of his truck except that it was 14 years old. We don't know how fast it could safely be driven around the curve either by Smith or by Stirling Moss. It is entirely possible that a skilled driver could have driven Smith's truck through the curve at speeds greater than his old truck could attain. We know that the curve was there but in itself this signifies nothing. We do not believe there is any meaningful connection between the fact of the curve and the accident.

About all that can be said with certainty concerning speed is that Smith was going too fast to be running into telephone poles with safety. The absence of any evidence of skidding or sliding is some indication that Smith did not or could not reduce his speed, whatever it was, before striking the pole. Nor is there any basis for assuming that Smith could not have brought about the damage to his truck, to the pole, and to himself at a speed of 30 miles per hour or less.

Appellant complains that the trial judge was guilty of speculation because he declined to attach any significance to the fact that the road was damp, that the day was dark and that there were curves and indications of "excessive speed." In the next breath she chides him for *not* speculating about blinding lights, dogs, cats and other animals, sneezing, falling asleep, being

chased off the road by another car and "countless other possibilities" despite the fact that the record is devoid of any evidence of the things she mentions. Indeed, to quote from her brief, "The exact factor that caused him to run off the road is a matter of strict conjecture."

Appellant offers in support of her contention decisions [2] of the courts of Arkansas, New York and the District of Columbia. Since we think these decisions are inapplicable here we shall not undertake a discussion of them. The Arkansas statute [3] makes the Commission's findings of fact conclusive and binding on the court and restricts the review to questions of law. Also prohibited is the production on appeal of any additional evidence. In New York [4] the decision of the Board is final as to all questions of fact and, except in certain cases, as to all questions of law. In the District of Columbia [5] the findings of the Deputy Commissioner are conclusive upon review, if supported by evidence. Maryland, on the other hand, in common with sixteen other states, authorizes a review of the facts as well as the law. Our statute contemplates a trial which essentially is *de novo*. *Richardson v. Home Mutual*, 235 Md. 252, 201 A. 2d 340 (1964).

We are urged to consider two cases from New Jersey [6] where, as in Maryland, appeals are tried *de novo*. In *O'Reilly v. Roberto Homes*, 31 N. J. Super. 387, 107 A. 2d 9 (1954), despite a conflict in the testimony in regard to tire marks and

---

**2.** *Phoenix Assurance Company of New York v. Britton*, 289 F. 2d 784 (D. C. Cir. 1961); *Maryland Casualty Co. v. Cardillo*, 107 F. 2d 959 (D. C. Cir. 1939); *Cox Bros. Lumber Co. v. Jones*, 220 Ark. 431, 248 S. W. 2d 91 (1952); *Elm Springs Canning Co. v. Sullins*, 207 Ark. 257, 180 S. W. 2d 113 (1944); *Van de Water v. Emmandine Farms, Inc.*, 18 App. Div. 2d 1119, 239 N. Y. S. 2d 182 (1963); *Willett v. Irona Milk Haulers*, 17 App. Div. 2d 1011, 233 N. Y. S. 2d 822 (1962); *Department of Taxation and Finance v. DeParma*, 254 App. Div. 615, 3 N. Y. S. 2d 120 (1938).

**3.** Ark. Stat. Ann., Tit. 81, § 1325(b) (1957 Repl. Vol. 1960).

**4.** N. Y. Workmen's Compensation Law (Consolidated Laws 1962).

**5.** Longshoremen's and Harbor Worker's Compensation Act, 33 U.S.C. 901-50 (1957).

**6.** N. J. Rev. Stat., § 34:15-66 (1937).

the fact of intoxication, the Commission *refused* to award compensation. The court reversed the Commission and found in favor of the claimant. Because there was competent believable evidence sufficient to sustain the court's finding it was not disturbed by the appellate court. Judge Foster, the trier of facts in this case, also reversed the Commission. If the evidence supporting his findings is legally sufficient then, if we follow the New Jersey court, we should not disturb his findings.

The other New Jersey case is *Olivera v. Hatco Chemical Co.,* 55 N. J. Super. 336, 150 A. 2d 781 (1959), where the employee, who was killed by a piece of timber thrown from a nearby centrifuge, had 0.163% alcohol in his system. A medical expert testified that there was no evidence to show that the amount of alcohol in his blood had anything to do with his death. Holding that the employee's death flowed from the operation of the machine, the court, quoting *Kulinka v. Flockhart Foundry Co.,* 9 N. J. Super. 495, 75 A. 2d 557 (1950), said at 789,

> " '* * * in order to defeat recovery the employer must show by the greater weight of the evidence that the employee's injury was produced solely by his intoxication. In other words, *the employment must supply no more than the setting, the stage, the situation in which the fall occurred; it can be no more than an inactive condition as distinguished from a moving cause.* If the hazards or risks which are incidental to the employment concur with the employee's insobriety in producing the fall or if the hazards or risks contribute efficiently to the production of the fall, compensation cannot then be denied. If the Legislature intended intoxication as a concurrent or contributory cause of an injury to effect a deprivation of the benefits of the statute it would have been a simple matter to have said so.' " (Emphasis supplied.)

Appellant argues that where intoxication and the hazards of the employment concur the claimant *must* prevail; that Smith, even though intoxicated, was in the course of his employment and compensation cannot be denied his widow. If appellant is

right, then the Maryland statute is meaningless and we do not agree that it is meaningless. We agree with the New Jersey court that if the employment does no more than supply the setting, the stage or the situation in which the injury occurs, if it is no more than an inactive condition and not a moving cause, compensation must be denied. Concurrence of intoxication and the setting, alone, is not enough. There must be in addition, if compensation is to be awarded, some active or moving or contributing cause.

In *Calka v. Mamaroneck Lodge,* 285 App. Div. 1093, 139 N. Y. S. 2d 316 (1955), there was no doubt about the employee's intoxication. He drank three or four bottles of beer before leaving a tavern at 5:45 p.m. Where he went or what he did for the next 2½ hours is unknown. At 8:20 p.m. on a divided highway, a witness heard brakes screeching and saw the employee's car strike an island and then crash into a tree. The impact killed him. The court's comment is apropos:

> "An examination of his blood disclosed an alcoholic content of 0.29 per cent. Section 70, subd. 5 of the Vehicle and Traffic Law declares that evidence of the presence of the 0.15 per cent of alcohol in the blood is *prima facie* proof of intoxication. A pathologist expressed an opinion that the decedent was intoxicated at the time of his death. The Board found that the accident was due solely to the decedent's intoxication and, pursuant to the dictate of Section 10 of the Workmen's Compensation Law, disallowed the claim. The proof of intoxication considered with the manner in which the accident happened constitutes the substantial evidence required to overcome the presumption found in Section 21 of the Workmen's Compensation Law that the accident did not result solely from the intoxication of the employee." *Id* at 317.

The notion that the claimant must prevail where intoxication and the hazards of employment concur, without more, was rejected by the Court of Appeals of New York in *Shearer, et al. v. Niagara Falls Power Co.,* 242 N. Y. 70, 150 N. E. 604 (1926). The Court said:

"Doubtless many cases may be suggested where intoxication has little or no relation to the injury; where the sober and drunk are alike exposed to the risk. The greater the added danger from intoxication, the greater the duty to keep sober. If, in a perfectly safe place, the employee falls because he is drunk and injures himself, it is clear that the injury results solely from the intoxication, but it would be unreasonable to deny compensation only in such cases. Here death was due to the fall from the bridge girder, but if the fall was due solely to the intoxication of the employee the case does not come under the act * * * we may state the rule of law as follows: If the Board reaches the conclusion on the evidence that Shearer was drunk at a place where if he fell he would probably be killed, and that he fell owing to his drunkenness, compensation should be denied." *Id* at 605.

We can not say Judge Foster's finding that intoxication was the sole cause of Smith's unfortunate and untimely death was clearly erroneous and we so hold. *Space Aero Products Co., Inc. v. R. E. Darling Co., Inc.,* 238 Md. 93, 208 A. 2d 74 (1965). *Talley v. Dept. of Correction,* 230 Md. 22, 185 A. 2d 352 (1962). Maryland Rule 886a.

## II.

Appellant tells us that the trial judge committed error in failing to admit into evidence the transcript of the testimony produced at the hearing before the Commission, as well as some of the testimony of the same witnesses produced at the trial. The record is not entirely clear as to whether the questions and answers before the Commission were formally offered in evidence, so while it may be that the judge "failed" to admit the transcript it can not be said that he refused to admit it. In any event the same witnesses testified at the trial and substantially the same testimony was either produced or proffered. What was excluded appears to have little or no bearing upon the single issue presented here. Therefore, even if the trial judge erred, the error was harmless.

### III.

Over objection the trial judge allowed Officer Borgmann to testify, as a witness for appellant, concerning an experiment he performed a year or so after the accident. He said he wanted to see what would happen "if you drove straight out the road, driving within a few feet of the yellow line in the center, and you hold the wheel straight." In the course of his experiment he discovered, so he said, that "the road has enough bank in it to the left when it goes around the curve to lead your vehicle right into this pole." As one might expect Judge Foster's natural skepticism rose immediately to the surface. He queried, "But if you hold your wheel straight, quite obviously you'll continue in a straight line?" Undaunted, the officer replied, "It won't continue in a straight line * * * the bank in the road pulled the vehicle around." He was careful to state, however, that he did not claim to be an expert in this area, a negligible concession, under the circumstances, as the court would probably have reached a similar conclusion. Appellant contends that it was error for the judge to strike out this testimony.

For evidence of experiments performed out of court to be admissible they must have been made under similar conditions and like circumstances to those existing in the case at issue. In *Richardson v. State,* 90 Md. 109, 118, 44 Atl. 999 (1899) we held that the results of an experiment were admissible because:

> "The record shows that the conditions were as nearly identical when the experiments of Unger were made, as it was in human care and caution to have them. The seat at the railroad and the street lamp were the same, and in the same locations; the lamp was burning with the same power and brilliancy; the season of the year, and the atmospheric conditions, were the same; the hour about 35 minutes later only, but at that date the sun set twenty-five minutes later than on May 2nd, and the decline of the natural light must have been about the same; no cause can be suggested for any difference in the diffusion of light from the lamp, and there was no change in any of the surroundings of the place."

And in *Keyser v. State,* 95 Md. 96, 99, 51 Atl. 1057 (1902), Judge Fowler, for the Court, said:

> "For, assuming that the question submitted a case similar to the case the Court was trying, yet unless the witness had actually himself made the experiment 'under precisely similar conditions and circumstances' he was not a competent witness to give his opinion as to whether the prosecuting witness could identify the traverser under the circumstances and conditions testified to by him. * * * But the opinion so held to be admissible must be based upon precisely similar *conditions and circumstances.*"

Except for the fact that Officer Borgmann's experiment was performed at the same curve there are no conditions or circumstances which are the same. He was driving a police car; Smith was driving a 1948 pickup. For Smith the road was damp; for the officer it was dry. The test was performed in daylight; the accident happened at night. The officer was within a few feet of the yellow center line; we don't know where Smith was. The speed in the test was 30 to 35 miles per hour; Smith's speed is unknown. Finally and principally, the officer was sober and alert; Smith's judgment was impaired by his intoxication.

Trial judges are vested with a generous amount of discretion in this area and this discretion will not be disturbed on appeal unless abuse is apparent. 20 Am. Jur. *Evidence,* §§ 758-59 (1939); 5A C.J.S. *Appeal & Error,* § 1604(a) at 90 (1958). In our opinion Judge Foster did not abuse his discretion in striking out the officer's testimony. In any case it is obvious, even if he had admitted it, that he was not going to believe it. Under the circumstances it is unlikely that appellant was prejudiced by its exclusion.

## IV.

Appellant, over objection, was allowed to testify that her husband told her he used Liberty Road to the Beltway in traveling to and from work. The complaint that the trial judge was guilty of prejudicial error in striking out this testimony borders on

the frivolous, although it might be noted that no mention of it was made at argument. Putting aside the question whether such testimony is otherwise inadmissible, see *Smart v. Graham, City Comptroller,* 179 Md. 476, 20 A. 2d 574 (1941), *Mutual Fire Insurance Co. v. Ritter,* 113 Md. 163, 77 Atl. 388 (1910), it ceased to have any relevance or probative value after the only issue upon which it might impinge was withdrawn before the trial in the lower court.

## V.

When all of the evidence, both claimant's and employer's, had been submitted, counsel for appellant said he "would move for *a directed verdict* in favor of the claimant * * *." (Emphasis supplied.) No reasons were given. The court's denial of the motion is alleged to be error.

Rule 535 of the *Maryland Rules of Procedure* provides, in part, as follows:

> "In any action tried by the court without a jury at law or in equity, any party, without waiving his right to offer evidence in the event the motion is not granted, may move at the close of the evidence offered by an opponent for a dismissal on the ground that upon the facts and the law he has shown no right to relief. * * *"

This rule was designed especially for non-jury situations and we have had occasion in the past to observe that a "motion for a directed verdict" is not the proper motion. *M & R Builders v. Michael,* 215 Md. 340, 138 A. 2d 350 (1958) ; *Eastern Contractors v. Zinkand,* 199 Md. 250, 86 A. 2d 492 (1952). Nor is it proper for the party making the motion to do so at the close of all of the evidence, as did the appellant here, rather than at the close of his opponent's evidence. The main purpose of the rule is to allow a party to test the legal sufficiency of his opponent's evidence before submitting evidence of his own. Should he prevail at this point he avoids the necessity of going further and as well the risk that his own evidence may supplement his opponent's evidence enough to provide the missing legal sufficiency. If he waits until the close of all of the evidence then the motion becomes a nugacity because all of the evidence is

then before the trier of facts and the determination of its legal sufficiency becomes an inseparable and necessary part of his decision. In jury cases, where a different climate prevails, a motion for a directed verdict offered at the close of all of the evidence gives the trial judge an opportunity to make a quantitative evaluation of the evidence, not to inform any decision to be made by him, but only to assess the propriety of allowing the jury to make findings of fact. The jury does the deciding; the judge simply sees to it that they have enough material to work with. We are of the opinion, under the circumstances here presented, that the rule alone provides sufficient reason for the denial of appellant's motion.

There is, however, another and perhaps more obvious reason which supports the ruling of the trial court. It seems very clear to us that, even if the proper motion had seasonably been made, the court, in order to grant the motion, would have been obliged to close his mind to the testimony of Dr. Fisher, the absence of any evidence of defect or malfunction in the truck, the fact that Smith's whereabouts and activities are unaccounted for during the four hours before the accident and the fact that the record is utterly devoid of any evidence, or indeed any inference, that there was present, besides intoxication, some active, moving cause contributing to the happening of the accident. *Talley v. Dept. of Correction, supra.* But appellant contends she was not given the benefit of the presumption embodied in Sec. 64 of Art. 101 of the Maryland Code Annotated.[7] The short answer to this contention is that there *was* "substantial evidence to the contrary." She contends also that she was denied the benefit of the statutory presumption in favor of the correctness of the decision of the Commission. Md. Code Ann. Art. 101, §56(c). This contention was fully answered in *Greenwalt v. Brauns Bldg. Specialties Corp.,* 203 Md. 313, 100 A. 2d 804

---

7. "In any proceeding for the enforcement of a claim for compensation under this Article, it shall be presumed in the absence of substantial evidence to the contrary:

\* \* \*

"(d) That the injury did not result solely from the intoxication of the injured employee while on duty \* \* \* "

(1953) and any further discussion would serve no useful purpose.

For the reasons set forth above the judgment will be affirmed, the costs to be paid by the appellant.

*Judgment affirmed. Costs to be paid by appellant.*