**Joseph STEWART, Appellee,**

v.

**OLIVER B. CANNON & SON, INC., Appellant.**

Superior Court of Delaware, New Castle County.

Submitted: Nov. 17, 1986.
Decided: June 22, 1988.

Clifford B. Hearn, Jr., Wilmington, for appellee.

Alfred M. Isaacs and James B. Ropp of of Morris, James, Hitchens & Williams, Wilmington, for appellant.

## OPINION

GEBELEIN, Judge.

This is an appeal of a March 12, 1986 finding of the Delaware Industrial Accident Board (hereinafter, "the Board") that Joseph Stewart (hereinafter, "appellee") was involved in a compensable industrial accident. The Board found appellee to be totally disabled from August 21, 1985, and thus awarded disability payments, reasonable medical expenses and attorney's fees, as costs, against Oliver B. Cannon & Son, Inc. (hereinafter, "appellant").

The appellee was injured on August 21, 1985, when he fell from a scaffolding while working as a painter for appellant at the General Motors Plant on Boxwood Road. The scaffolding was not equipped with a safety railing and the appellee was not using a safety harness at the time of the fall. He admittedly had consumed two 12 ounce cans of beer while on his "lunch break", approximately two and one half (2½) hours prior to his fall. However, a blood serum alcohol test performed on a specimen drawn from appellee two (2) hours after the fall, at the Medical Center of Delaware, suggests that the appellee may have consumed additional alcohol at various other times during the work shift.

The appellant does not dispute appellee's contention that his injuries were incurred when he fell from the scaffolding on the job site. However, appellant does contend that the appellee forfeited his right to compensation under 19 *Del.C.* § 2353 by working while in an intoxicated condition and by failing to use available safety equipment. The Board ruled against the appellant on this argument. The issue at bar is whether the Board's finding that appellant failed to meet its burden of establishing by a preponderance of the evidence that appellee was intoxicated and had willfully failed or refused to use a reasonable safety appliance is supported by substantial evidence. *GMC v. Freeman*, Del.Supr., 164 A.2d 686 (1960); *Globe Union, Inc. v. Baker*, Del. Super., 310 A.2d 883 (1973), aff'd, Del. Supr., 317 A.2d 26 (1974); *Johnson v. Chrysler Corp.*, Del.Supr., 213 A.2d 64 (1965) and *Hebb v. Swindell–Dressler, Inc.*, Del.Super., 394 A.2d 249 (1978).

■ The *Delaware Code* expressly prohibits the recovery of worker's compensation benefits for injuries resulting from a worker's voluntary intoxication or willful failure or refusal to use a reasonable safety appliance. This statute provides in pertinent part:

> *If any employee be injured as a result of his intoxication ... [or] ... because of his willful failure or refusal to use a reasonable safety appliance provided for him or to perform a duty required by statute, he shall not be entitled to recover damages in an action at law or to compensation or medical, dental, optometric, chiropractic or hospital services under the compensatory provisions of this chapter. The burden of proof under this subsection shall be on the employer.* 19 *Del.C.* § 2353(b). (Emphasis added.)

The provisions of § 2353(b) are a statement of public policy, clear and unequivocal on their face, creating a complete defense in cases involving intoxicated employees, *Hopper v. F.W. Corridori Roofing Co.*, Del.Supr., 305 A.2d 309 (1973). However, there is no definition of intoxication in 19 *Del.C.* § 2301, the general definition section of the worker's compensation act.

## I.

■ Appellant first urges that the Board should have given great weight to the Delaware Motor Vehicle Statute adopting a .10% blood alcohol concentration (BAC) as a conclusive presumption of intoxication for the purposes of driving an automobile. 21 *Del.C.* § 4177. At the hearing, appellant offered into evidence testimony from two witnesses, a physician and a toxicologist, that the appellee's blood alcohol concentration was somewhere in the range between .110% and .117% (excluding the variance of error), depending upon the factor used in calculating the conversion from serum blood alcohol to whole blood alcohol. Appellant argues that 21 *Del.C.* § 4177 is an expression of public policy by the General Assembly, and, that the .10%

BAC standard thus should be given great weight in determining intoxication for purposes of workman's compensation law.

Appellant refers the Court to *Smith v. Roads Commission,* 240 Md. 525, 214 A.2d 792 (1965), in support of this position. In *Smith,* the decedent employee, while on his way home from work, drove his pickup truck off the road and struck a telephone pole. He sustained injuries which caused his death. A specimen of blood taken during the post mortem examination revealed a BAC of .27%. In a drunken driving prosecution in Maryland, at the time of the *Smith* case, .15% BAC was *prima facie* evidence that the defendant was under the influence of intoxicating liquor. *Md.Code Ann.,* Art. 35 § 100(a)(3) (1957 Cum.Supp. 1965). The Maryland Court of Appeals found that the evidence of intoxication was both *"overwhelming and unchallenged"* (emphasis added). It also found that a .27% BAC would indicate a high level of intoxication accompanied by a decrease in ability to perform finer motions, such as braking and steering an automobile, and that many people "pass out" at this level. Since the Court in *Smith* was deciding a workman's compensation claim that involved the death of an employer driving a motor vehicle while intoxicated, it necessarily considered the appropriate State statute restricting the use of intoxicants while driving a motor vehicle. It did not extend the application of its decision to workman's compensation cases beyond these facts. The circumstances giving rise to the work-related incident and the substantially higher BAC further distinguish the *Smith* decision from the case at bar and limit its application accordingly.

While the Board may consider the provisions of 21 *Del.C.* § 4177 as a legislative expression of public policy regarding being under the influence of intoxicating liquor, such provisions are not controlling in a workman's compensation case. Had the legislature intended to adopt a .10% BAC as either *prima facie* evidence of intoxi-

cation or a conclusive presumption of intoxication in workman's compensation cases affected by 19 *Del.C.* § 2353(b), it could easily have done so. Based on the foregoing, this Court cannot conclude, as suggested by appellant, that the terms "intoxication" and "under the influence" of intoxicating liquors are synonymous for all purposes.[1] *See, e.g., Sumner v. State,* 164 Tex.Cr.R. 262, 298 S.W.2d 577 (1956); *Taylor v. Joyce,* 4 Cal.App.2d 612, 41 P.2d 967, 968 (1935); *Uldrich v. State,* 162 Neb. 746, 77 N.W.2d 305 (1956); *Eason v. Weaver,* 5th Cir. 557 F.2d 1202 (1977); *State v. Durrant,* Del.Supr., 188 A.2d 526 (1963).

The public policy behind a strict law defining "under the influence" in driving cases is the extremely dangerous nature of driving a motor vehicle while even slightly impaired. This policy is directly related to the number of deaths and serious injuries sustained on the highways of this State. The policy behind the intoxication defense in workmen's compensation law is quite different. The employer is not to be required to compensate employees for injuries sustained by them which are the result of that employee's "intoxication". Thus, to prevail on this defense, the employer must clearly establish that actual intoxication caused the accident. *Wills v. Penn Dell Salvage, Inc.,* Del.Super., 274 A.2d 144, aff'd Del.Supr., 282 A.2d 613 (1971); and *Hopper, supra.*

## II.

The Court next looks to the evidence regarding intoxication. Appellant's toxicologist, a Deputy State Medical Examiner, testified that the appellee's BAC at the time of the injury was fairly high and that, in his opinion, appellee was under the influence. A clinical pathologist of the Medical Center of Delaware, testified as to the accuracy of the analyzer used to test the blood specimen and the hospital procedures used in such cases. Absent evidence to the contrary, the Court presumes that

---

1. In fact, the jury instruction routinely used by this Court in driving under the influence cases clearly points out that "... the State is not required to go so far as to prove actual intoxi- cation. It is sufficient if the proof shows beyond a reasonable doubt that the defendant was under the influence of intoxicating liquor ..."

the tests were performed in a proper, careful and prudent manner. *Judah v. State,* Del.Supr., 234 A.2d 910 (1967). The pathologist testified to a 5% variance of error in analysis and the Deputy State Medical Examiner testified to a 25% variance of error in the conversion formula used in determining BAC from a serum blood sample. Testimony indicated that the combined variance of error in testing and ratio for blood serum to whole blood could change the appellee's BAC to less than .09%.

The Medical Center's pathologist specifically testified that the appellee's BAC was .11% approximately 2 hours after the fall. He stated on cross-examination that the factor for adjusting the results from blood serum to whole blood vary. The Deputy State Medical Examiner testified that it would take five (5) drinks to create an alcohol content of .11% in a person of the appellee's weight, that the BAC level of appellee would have been higher at the time of the accident, that appellee's judgment and perception would have been visibly impaired and that he would have been under the influence of alcohol. He further noted that a different ratio for blood serum to whole blood would change the BAC figures. Finally, the Deputy State Medical Examiner testified that the effects of an intoxicating beverage differ depending on the weight of the drinker, food in his stomach and prior drinking habits.

The job site supervisor who monitored the work on the evening of the injury, testified that the appellee was sober and had not been seen drinking on the job. This testimony was supported by the appellee's son, a painter who was working on the same job site. In addition, the job site superintendent testified that appellee, to his knowledge, was not drinking and was not under the influence, although he last saw appellee about one and one-half (1½) hours before he fell. He also saw the appellee a few minutes after the fall and said that the appellee did not appear to be intoxicated. Appellant questions the credibility of these witnesses because of past association, the possible consequences of their testimony and, in the case of appellee's son, the relationship itself.

Appellee testified that he had been walking, backward, on a six (6) inch steel beam ten (10) feet above the ground with a spray painting line for several hours prior to transferring to the scaffolding and the subsequent fall. There also is testimony in the record, by appellee, that the scaffolding is of a portable nature and unsturdy. The exact reason for the appellee's fall is not clear from the record, although the appellee states that he was pulling on a spray painting line at the time and that the scaffolding might have moved, suggesting that he may have lost his balance and fallen.

The Board found that appellant did not establish by a preponderance of the evidence that appellee was intoxicated or that appellee's alleged intoxication was the proximate cause of the accident causing the injury. Substantial evidence supports this finding. Three eyewitnesses state that they did not see appellee drink on the job and that he did not appear intoxicated prior to the accident. The Board found this testimony, as well as that of the appellee, to be credible. Appellant, in support of its theory of intoxication, presented only testimony regarding appellee's BAC, which admittedly could be less than .09% due to the combined variance of error in testing and ratio for blood serum to whole blood.

*Black's Law Dictionary* defines "intoxication" as a situation where, by reason of drinking intoxicants, a party lacks the normal use of his physical or mental faculties, rendering him incapable of acting in the manner in which an ordinarily prudent and cautious man, using reasonable care, would act under the circumstances. *See also, Handy v. Geary,* 105 R.I. 419, 252 A.2d 435 (1969). There is undisputed testimony by appellee that he had been walking backward on a six-inch steel beam 10 feet above the ground for several hours before transferring to the scaffolding and the subsequent fall. This does not suggest a lack of the normal physical or mental faculties for coordination and caution. Likewise, the eyewitnesses indicate they observed no outward signs that appellee lacked the normal use of his physical or mental faculties or

that he was acting unreasonably under the circumstances.

A Delaware case denying recovery for injuries (and later death) due to an employee's intoxication is distinguished from the instant case. In *Hopper v. F.W. Corridori Roofing Co.*, Del.Supr., 305 A.2d 309 (1973), a minor employee was found dead in a field adjacent to the employer's office following his expulsion from an office Christmas party. His death by suffocation was caused by regurgitation, resulting from acute intoxication. The Court found that the mere availability of alcohol at an office social event did not constitute "giving" alcohol to a minor. Further, there was no evidence the minor was served alcohol at the party; there was evidence that he had been cautioned not to drink, and evidence showed that he had been asked to leave the party when he engaged in a loud argument. He exhibited no signs of lack of control. The Superior Court reversed the Board's granting of benefits because there was insufficient evidence to sustain the Board's conclusion that the death arose out of his employment. The Supreme Court affirmed the lower court decision, but on different grounds, ruling that the employee forfeited his benefits under § 2353(b), since the intoxication clearly was the cause of harm and since the employer did not serve the alcohol.

In the instant case, the injuries occurred due to a fall from a scaffold. There is clearly evidence in the record to support the Board's determination that intoxication was not proved by a preponderance of the evidence. Likewise, the Board found no evidence to establish a causal relationship of the accident to intoxication, cf. *Penn Dell Salvage, Inc., supra.*

Based on the foregoing, this Court finds substantial evidence to support the Board's findings.

### III.

The second argument presented by the appellant as a basis for reversing the Board is that the appellee forfeited his right to recover workman's compensation benefits because of his willful failure to use a safety harness available to him on the work site. 19 *Del.C.* § 2353. The appellant's superintendent testified that the scaffold did not have a railing, because there was no room for a railing, and that the wheels on the scaffold were locked. He further stated that he was sure that there was something above the appellee to which he could have tied a safety line. However, he said, under the circumstances, the decision to use a safety harness was discretionary and left to the individual mechanic. The work rules required a safety line to be used; however, the superintendent was not familiar with the rules, nor does the record indicate that the other witnesses had a knowledge of the work rules. The superintendent believed that lighting was needed on the job and instructed the appellee not to go on the scaffolding until it was set up. The appellee's immediate supervisor testified that the use of a safety line was not feasible because there wasn't anything within reach to tie it to, but that a light would have been helpful. The appellee testified that he was familiar with the use and purpose of a safety harness, but did not use it on the evening of his injury because there was nowhere to tie it. He further stated that the scaffold was not very sturdy and that he could not have secured the safety line to it because a fall would have pulled the scaffold on top of him. Appellee claimed that he was not aware of the safety and work rules. Appellant argues that the appellee unjustifiably failed to wear the safety harness because it was inconvenient. On this testimony and argument, the Board found that the appellee did not fail to use required safety equipment.

Appellant cites the ruling in *Lobdell Car Wheel Co. v. Subielski*, Del.Super., 125 A. 462 (1924) as the standard for determining whether the appellee willfully failed to utilize a safety device. A willful act is done intentionally, knowingly, purposely, and without justifiable excuse, as distinguished from an act done carelessly, thoughtlessly, heedlessly or inadvertently. *Subielski, supra.*

824

In *Subielski*, the claimant had been issued goggles and was instructed to wear them. The claimant got a metal shaving in his eye while grinding and chipping castings. He eventually lost his eye as a result of the injury. Subielski admitted that he understood the order that required the wearing of goggles and its purpose in protecting his eyes. After the accident he stated that if he removed the goggles, it was because they were heavy and he wanted to rest his eyes. The only substantial conflict in the record was whether Subielski was wearing the goggles or whether the injury was caused by defective goggles, unlike the instant case where there is conflict in the record concerning the feasibility of using a safety harness and whether it was mandated by the employer. In order to invoke the forfeiture provision, the employer has the burden of proving by a preponderance of the evidence that the violation of the statute was willful, intentional and deliberate, and not just careless and inadvertent. *Carey v. Bryan & Rollins*, Del.Super., 117 A.2d 240 (1955). If the use of the safety line was discretionary, failure to use it might be careless, but not willful. If its use was impossible or impractical, then appellee's conduct should not be considered careless and it might be considered as justifiably excused. *Subielski, supra.*

While Superior Court has jurisdiction to hear and determine appeals from the Industrial Accident Board, 19 *Del.C.* § 2350, the scope of review is narrow, *Craig v. Synvar Corp.*, Del.Super., 233 A.2d 161 (1967), and is limited to an examination of the record and a determination of whether there is substantial competent evidence, as a matter of law, to support the findings and conclusions of the Board, *Hebb v. Swindell–Dressler, Inc.*, Del.Super., 394 A.2d 249 (1978). The Court does not sit as a trier of fact with authority to weigh evidence, determine credibility and make factual findings and conclusions. *Johnson v. Chrysler Corp.*, Del.Supr., 213 A.2d 64 (1965). If the Board's decision is supported by substantial evidence, it is conclusive and binding on this Court, *Hunter v. Wright Transfer and Supply Co.*, Del.Super., 69 A.2d 296 (1949). Issues of credibility and conflicting evidence are to be resolved by the Board, not this Court, *Air Mod Corp. v. Newton*, Del.Supr., 215 A.2d 434 (1965). The Court determines only whether there is satisfactory proof to support a factual finding, *GMC v. Freeman*, Del.Supr., 164 A.2d 686 (1960), and whether any error of law exists.

This Court is satisfied that there was satisfactory evidence of record to support the factual findings of the Board that the employer failed to prove that the accident was proximately caused by the employee's "wilful" failure to use safety devices; and that appellant failed to meet its burden of proving that appellee was intoxicated and that his intoxication was a direct, proximate cause of the accident, by a preponderance of the evidence. 19 *Del.C.* § 2353(b). In the hearing before the Board, the transcript of which accompanied this appeal, the appellant and appellee offered testimony and witnesses as to the circumstances surrounding appellee's injury. At best, the record presents factual disputes which involved the credibility of witnesses and a conflict of evidence which the Board resolved against the appellant. That resolution is binding on this Court. *Newton, supra.*

It is the conclusion of this Court that there is substantial evidence to support the decision and findings of the Board; therefore, the decision of the Board is AFFIRMED.

IT IS SO ORDERED.