The DOWN UNDER, LTD., t/a The
Down Under Restaurant, Appellant,

v.

DELAWARE ALCOHOLIC BEVERAGE
CONTROL COMMISSION, Appellee.

Superior Court of Delaware,
New Castle County.

Submitted: July 13, 1989.
Decided: Oct. 31, 1989.

Robert Jacobs, of Jacobs & Crumplar, P.A., for appellant.

John K. Welch, Deputy Atty. Gen., Dept. of Justice, for appellee.

HERLIHY, Judge.

This is an appeal by The Down Under, Ltd., t/a The Down Under Restaurant [Down Under] from a decision of the Delaware Alcoholic Beverage Control Commission [Commission].

After a hearing on October 20, 1988, the Commission determined that Down Under had sold an alcoholic beverage to a person who was or who appeared to be intoxicated (4 *Del.C.* § 711) and had sold an alcoholic beverage to a person under the age of 21 (4 *Del.C.* § 713(a)(1), but it dismissed the charge that Down Under had allowed individuals under the age of 21 to sit or stand at a bar where alcoholic beverages were being dispensed (Commission Rule 52 [FN1]). The Commission fined Down Under $100 on each of these two violations. It is from these findings of violation and the fines imposed that Down Under appeals.

I

On May 12, 1988 Commission agents and the Newark Police Department conducted an investigation at Down Under. Commission Agent Dana Shifflett, who has received training to identify intoxicated persons under the Delaware State Police T.I. P.S. Program, conducted a surveillance inside Down Under's premises. For approximately thirty minutes she observed a man at the bar, later identified as Mr. Giroud, who was sweating profusely, swaying back and forth with eyes glazed, and drinking a beer. In addition, she observed him having difficulty lighting a cigarette. She made a determination that he appeared to be intoxicated. After about twenty-five minutes of observation and shortly before his arrest, he was served another beer. He was taken into custody for the purpose of giving him a breathalyzer test.

After initially objecting, Giroud took a breathalyzer test which indicated a blood alcohol content of .22%. The Newark police officer who administered the test noted Giroud's glassy eyes and slurred speech. He said Giroud appeared to be intoxicated. Mr. Giroud testified that his eyes were glassy that evening because he had worked around dust that day and he was sweating because he had been dancing. In addition, he claimed allergy and speech problems.

Down Under's barmaid, who has also taken the T.I.P.S. Program and who has had occasions when she stopped serving patrons because they appeared to be intoxicated, testified that she served Mr. Giroud. She observed him dancing in the crowded bar and, although he appeared hot when she served him, he did not appear to her to be intoxicated. She served Giroud two beers.

Newark Police Patrolman Robert Agnor [Agnor] also testified. During the investigation of the Down Under's premises, he approached a young lady at the bar with an alcoholic drink, later identified as Ms. Savage, who appeared to be underage. She had a stamped hand, indicating she was of legal drinking age. Agnor testified Ms. Savage told him that she had shown the doorman her driver's license indicating that she was underage, yet she was stamped as 21 or over. The officer gave her a breathalyzer test which indicated she had consumed alcohol and cited her for consumption of alcohol by a minor. Agnor did not search Ms. Savage or investigate further.

Ms. Savage testified that she had shown the doorman a state identification card with her picture on it indicating she was underage. She also showed other identification but not a Delaware driver's license. After being stamped, she put her purse with identification in a car. She further testified that she bought a whisky sour at the bar and later pled guilty to consuming alcohol underage.

The Down Under's former doorman explained the Down Under's carding procedure, which requires patrons to show two forms of identification before being stamped as being able to drink alcoholic beverages. He further testified that he did not remember Ms. Savage coming in.

## II

Down Under's grounds for appeal are (1) the statute prohibiting sale of alcoholic beverages to an intoxicated person or one who appears to be intoxicated is unconstitutionally vague, (2) the two statutes of which it was found guilty are criminal and require a finding beyond a reasonable doubt, (3) there was not substantial evidence to support the findings of violations of the two statutory provisions, and (4) statements made by Ms. Savage were inadmissible as she was not advised of her constitutional rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), prior to making incriminating statements. Down Under raises several issues of first impression in this State.

■ Down Under did not argue the first two enumerated issues before the Commission. Under the waiver rule, issues and arguments not raised to an administrative agency cannot be considered by a reviewing court. *Tenneco Oil Co. v. Department of Energy,* D.Del., 475 F.Supp. 299, 307 (1979); *see also Danby v. Osteopathic Hospital Ass'n of Delaware,* Del.Supr., 104 A.2d 903 (1954). This rule furthers the goal of permitting agencies to apply their specialized expertise, correct their own errors, and discourage litigants from reserving issues for appeal. *Tenneco,* 475 F.Supp. at 307; *United States v. Tucker Truck Lines,* 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952).

However, this rule is not absolute. In *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), the Court reaffirmed its commitment to the principle that constitutional issues need not be presented to an administrative agency as a prerequisite for their consideration by a reviewing court. *Tenneco,* 475 F.Supp. at 311. Although Down Under should have raised these constitutional issues before the Commission in order to further the goal behind the rule, these issues will not be

considered waived in this case under *Tenneco* and *Califano*.

### III

Down Under challenges the constitutionality of the statute which prohibits the sale of alcoholic beverages to a person who is or appears to be intoxicated. The statute in question, 4 *Del.C.* § 711, reads:

Any licensee, or employee of a licensee, or person in charge of a licensed premises shall refuse to sell or serve alcoholic liquors to any individual if such individual is intoxicated or appears to be intoxicated....

Down Under claims the words "intoxicated or appears to be intoxicated" are unconstitutionally vague because, in a criminal statute, they do not provide sufficient due process notice of the prohibited conduct. Down Under claims there must be a scientific, objectively verifiable standard or clear guidelines for a subjective standard.

The Commission is authorized by statute to suspend or fine licensees for a number of reasons:

The licensee has violated any provision of this title or any regulation of the Commission pursuant hereto;

4 *Del.C.* § 561(b)(1).

The statutory provision prohibiting sale of alcoholic liquor to a person who is or appears to be intoxicated is also within Title 4. Consequently, the Commission has statutory authority to suspend the license of or fine Down Under for violating § 711. The Commission, as an administrative agency, does *not* have the power to levy a criminal fine or impose imprisonment. 1 Am Jur 2d, Administrative Law § 173.

A licensee who violates § 711 can also be punished by a court for a criminal offense by a fine of up to $100. 4 *Del.C.* § 903(4). Justices of the Peace are given original jurisdiction over alleged violations of § 711. 4 *Del.C.* § 903.

Down Under's argument is that, because § 711 is a criminal statute, the phrase "intoxicated or appears to be intoxicated" must be judged by constitutional standards applicable to the construction of criminal statutes. It would appear that Down Under's argument is one of first impression in this State.

The United States Supreme Court has said, "It is equally well established that a State has broad power under the Twenty-First Amendment to regulate the times, places and circumstances under which liquor may be sold." *New York State Liquor Authority v. Bellanca*, 452 U.S. 714, 715, 101 S.Ct. 2599, 2600, 69 L.Ed.2d 357, 360 (1981).

The Delaware Supreme Court has said:

A license to sell alcoholic liquor is not a property right in any legal or constitutional sense; no right arising from a contractual relationship is conferred on the licensee. It is a mere temporary permit issued under the authority of the State in the exercise of its police power to do that which otherwise would be unlawful.

*Darling Apartment Co. v. Springer*, Del. Supr., 22 A.2d 397, 401 (1941); *accord State v. 0.622 Acres of Land, More or Less, etc.*, Del.Super., 254 A.2d 57, 58 (1969).

Further, the purpose of Delaware's liquor laws is to make liquor available but under rigid control at all times in the interest of the general welfare. *Wilmington Country Club v. Delaware Liquor Commission*, Del.Super., 91 A.2d 250, 254 (1952).

A proceeding whether to grant a license, when protested, is considered to be in the nature of a civil action. *Lord v. Delaware Liquor Comm.*, Del.Ct.Gen. Sess., 13 A.2d 436, 438, (1940). But this matter involves a proceeding to revoke, suspend or otherwise impose administrative penalties on a licensee because of an alleged violation of a statute which can involve the imposition of criminal penalty by a court.

The proceeding before the Commission to revoke, suspend or fine a licensee is not a criminal proceeding but is a civil one, even when revocation or other action is sought because of the violation of a criminal statute. *V.J.R. Bar Corp. v.*

Com. Liquor Control Board, Pa.Supr., 480 Pa. 322, 390 A.2d 163, 165 (1978); Kearns v. Aragon, N.Mex.Supr., 65 N.M. 119, 333 P.2d 607, 609-10 (1958); Boyd v. Allen, N.C.Supr., 246 N.C. 150, 97 S.E.2d 864, 867 (1957).

Accordingly, the standards of vagueness and indefiniteness applicable to criminal statutes are not applicable to the sale of liquor. In Re Tahiti Bar, Inc., Pa.Supr., 395 Pa. 355, 150 A.2d 112, 118 (1959); appeal dismissed sub nom. Tahiti Bar, Inc. v. Pennsylvania Liquor Control Board, 361 U.S. 85, 80 S.Ct. 159, 4 L.Ed.2d 116 (1959); Appeal of Quaker City Development Co., Inc., Pa.Comm.Ct., 25 Pa. Cmwlth. 190, 359 A.2d 835, 837 (1976); G. & J.K. Enterprises v. Div. of Alcoholic Beverage Control, N.J.Super.A.D., 205 N.J.Super. 77, 500 A.2d 43, 47 (1985).

In G. & J.K. Enterprises the New Jersey Court sustained against constitutional attack for vagueness a statute prohibiting a licensee from engaging in or allowing lewdness and immoral activity on its premises. In Quaker City Development the Commonwealth Court found constitutional a statute which permitted disciplinary action against a licensee "upon any other sufficient cause shown". Id. 359 A.2d at 837. In Tahiti Bar the Pennsylvania Supreme Court held as not constitutionally vague a statute prohibiting "lewd, immoral or improper" conduct in a licensed premises. Id. 150 A.2d at 118.

In a criminal case, a statute prohibiting the sale of alcohol to an intoxicated person was held not to be unconstitutionally vague. Campos v. State, Tex.Ct.Crim. App., 623 S.W.2d 657 (1981). The court said that intoxication does not need definition since the term is not technical and has a commonly understood meaning. "A person of common intelligence can determine with reasonable precision what conduct it is his duty to avoid under the statute." Id. at 659.

In Kyle v. State, Okla.Ct.Crim.App., 366 P.2d 961 (1961), the court upheld a criminal conviction of a licensee who sold liquor to "a person who is intoxicated". While the statute was not challenged for vagueness, the court reviewed what intoxicated meant since the statute did not define it. "In the liquor business, it is the intent of the law that a high degree of responsibility be placed upon the dealer to take care that he does not sell to a drunk man." Id. at 965.

■ Down Under argues that since there is no objective standard to determine whether a person is intoxicated, such as the .10% standard specified in the law prohibiting driving while under the influence, 21 Del.C. § 4177(b), it or any licensee must rely upon subjective standards. In virtually the same breath, Down Under concedes the impracticality of an objective standard since it would impose an economically and commercially unreasonable burden upon licensees who would be administering blood alcohol tests to their customers before serving them drinks.

Down Under's argument further ignores the fact that even under the Motor Vehicle Code a conviction can be obtained where there is not a specific blood alcohol test result present. 21 Del.C. § 4177(b); see also State v. Pritchett, Del.Super., 173 A.2d 886 (1961) (conviction for operating motor vehicle can be based on circumstantial evidence; there was no blood alcohol test).

Down Under's argument that there must be either (1) an objective standard, or (2) in the absence of an objective standard, some guidelines for subjective standards misses the point. As the Oklahoma and Texas courts have said, intoxication is a matter of common intelligence when applied to convictions of selling to an intoxicated person.

The Delaware Supreme Court has held that a witness does not have to be qualified as an expert to testify about the degree of a person's intoxication.

> We believe that the sobriety of a person or his degree of intoxication can be determined by the direct answers of those who have seen him, and that they may express their opinion in relation thereto, as intoxication may fairly be considered in the realm of common knowledge.

A witness in a case such as this may state whether a certain person is under the influence of intoxicating liquor or had that appearance at a given time. The witness in effect describes the facts, and then given his opinion of the person whom he has observed at a particular time. The indications of intoxication are commonly known. Witnesses, whether called as experts or not, may testify in this regard and their opinions in this respect should be admitted in evidence.

We think the testimony of the officers does not rise to the dignity of expert testimony; rather, we feel such testimony should be classified as falling within the general knowledge of persons regardless of whether they are experts or not, . . . . [Citations omitted.]

*State v. Durrant*, Del.Supr., 188 A.2d 526, 529 (1963). If a *criminal* conviction can rest on the testimony of a lay person citing observations from which he or she - concludes another person is intoxicated or appears to be intoxicated, then without doubt a civil proceeding and its result can rest on the same type of evidence. The *Durrant* opinion underscores that observations and opinions of intoxication fall within the realm of common knowledge and no set of specific guidelines for a subjective opinion are needed. Consequently, § 711 is constitutionally worded and the Commission may impose the range of penalties available to it upon a licensee which the Commission has found, as here, violates it.

### B

■ Down Under further argues that the Commission erred in adopting as a conclusive presumption that the patron's (Giroud's) .22 intoxilyzer test reading established his intoxication. On an appeal from the Commission, one of this Court's functions is to determine that the Commission's decision is free of errors of law. *General Motors Corp. v. Morgan*, Del.Super., 286 A.2d 759, 760 (1971).

This Court cannot detect from the Commission's decision of December 12, 1988 that the patron's intoxilyzer test result was adopted as a conclusive presumption.

Down Under additionally contends that it was improper for the Commission to consider the test result because the importance or relevance of the reading stems from the Motor Vehicle Code. (See discussion, *supra* at 679–680.)

Our Supreme Court has said that:

the legislative purpose of both §§ 711 and 713 is to protect the public in general and to prevent a breach of the public peace.

*Wright v. Moffitt*, Del.Supr., 437 A.2d 554, 557 (1981).

Down Under, however, cites *Stewart v. Oliver B. Cannon & Son., Inc.*, Del.Super., 551 A.2d 818 (1988), as authority that the policy behind the blood alcohol standard of .10 in the Motor Vehicle Code is different than the policy underlying § 711. *Stewart* concerned the use by the Industrial Accident Board of a blood alcohol test in a workmen's compensation case. The Court in *Stewart* said, "The policy behind compensation law is quite different [than the law dealing with driving under the influence]." *Id.* at 821.

Down Under ignores the policy behind the law prohibiting driving under the influence stated in *Stewart*, "[t]he policy behind a strict law defining, 'under the influence' in driving cases is the extremely dangerous nature of driving a motor vehicle even when slightly impaired." *Id.* at 821. When that policy statement is coupled with the general policy underlying § 711 as enunciated in *Wright*, there is a definite linkage of these two statutes and their policies which clearly demonstrates that the Commission was entirely correct to consider the patron's blood alcohol content, a content which is more than double the legal limit specified in the Motor Vehicle Code.

### IV

#### A

■ Down Under contends that since 4 *Del.C.* §§ 711 and 713 are criminal statutes, the state must prove a violation beyond a reasonable doubt. This claim presents an issue of first impression in this State. However, disciplinary proceedings

before the Commission are civil proceedings, *Butler Oak Tavern v. Division of Alcoholic Bev. Com.*, N.J.Supr., 20 N.J. 373, 120 A.2d 24 (1955); *Pennsylvania Liquor Control Board v. Summit Hill Rod and Gun Club*, Pa.Super., 184 Pa.Super. 584, 135 A.2d 781 (1957); *see Lord*, 13 A.2d 436. Such proceedings are civil even when the underlying charge is a violation of a penal statute. *Keller v. Kentucky Alcoholic Beverage Control Bd.*, Ken.Ct.App., 279 Ky. 272, 130 S.W.2d 821 (1939); *DiManna v. Kalbin*, Colo.Ct.App., 646 P.2d 403 (1982); *Kearns*, 333 P.2d 607.

Consequently, the State did not have to prove beyond a reasonable doubt that liquor was sold to a person who was intoxicated or appeared to be intoxicated (§ 711) or that liquor was served to a minor (§ 713).

B

■ The function of this Court remains, however, to examine the record to determine whether or not the Commission's findings are based on substantial evidence. *Delaware Alcoholic Beverage Control Commission v. Alfred I. duPont School Dist.*, Del.Supr., 385 A.2d 1123, 1125 (1978); 4 *Del.C.* § 541(c). The Commission's proceedings and any appeals therefrom are governed by the Administrative Procedures Act. 29 *Del.C.* § 10161(1). That Act specifies that this Court's role is limited to determine whether the Commission's decision was supported by substantial evidence on the record. 29 *Del.C.* § 10142(d). There is no discernable difference between that section and 4 *Del.C.* § 541(c), which is the specific statutory section in the liquor law stating the standard of review for Commission appeals. *Cebrick v. Peake*, Del.Supr., 426 A.2d 319, 321 (1981). Substantial evidence is evidence which affords a substantial basis of fact from which the fact in issue can be reasonably inferred. *Alfred I. duPont School Dist.*, 385 A.2d at 1125. It is more than a scintilla but less than a preponderance. *Olney v. Cooch*, Del.Supr., 425 A.2d 610, 614 (1981).

■ When a finding of the Commission is based on substantial evidence, this Court does not substitute its judgment for that of the Commission even though it would have reached a different conclusion. *Stewart v. Delaware Liquor Commission*, Del.Gen. Sess., 74 A.2d 472 (1950). It is the function of the Commission to sit as the trier of fact with the authority to weigh the evidence, determine issues of credibility and make its own factual findings and conclusions. *Rogers v. Delaware Liquor Commission*, Del.Super., 90 A.2d 668 (1952).

C

■ There was substantial evidence in the record before the Commission to support its findings of violations of §§ 711 and 713. As to the charge of serving alcohol to a person who was or appeared to be intoxicated, Agent Shifflett observed the patron in question, Giroud, for approximately one-half hour. She observed during this period that Giroud continually swayed, had trouble lighting a cigarette, was sweating profusely and that his eyes were glazed. She testified that she observed Giroud being served a beer at a time he appeared to be intoxicated. Officer Shifflett had taken the State Police T.I.P.S. Program, which helps those who take it to identify intoxicated persons.

After the "raid" on Down Under, Giroud took an intoxilyzer test which indicated a blood alcohol reading of .22%. The Newark Police Officer who administered the test noted Giroud's glazed eyes and slurred speech and the officer testified Giroud appeared to be intoxicated.

Down Under attacks this evidence through the testimony of its barmaid who, like the agent, had taken the T.I.P.S. Program. She testified that Giroud did not appear intoxicated, was sweating because the bar was hot and Giroud had been dancing. The testimony of Giroud, an acquaintance of one of the owners, offered explanations for sweating, slurred speech and glazed eyes. Down Under attacked the reliability and admissibility of the .22% intoxilyzer reading.

Down Under argues that the licensee-employee alone is the one to whom the patron

must appear to be intoxicated, not a third party. It cites no authority for this patently fallacious proposition. If that were the law, a licensee would have to be freed from any Commission disciplinary action upon the testimony of its employee that the customer was not and did not appear to be intoxicated.

■■■ It was the Commission's function, not this Court's, to determine witness credibility and to resolve factual issues. *Rogers*, 90 A.2d at 669. Down Under's underlying contention amounts to an effort to have this Court determine the credibility of the witness. That approach must fail. Down Under's attack on the intoxilyzer goes to weight not admissibility. *Cf. State v. Rucker*, Del.Super., 297 A.2d 400 (1972) (a properly administered breath test even with a slight variance in calibration is still sufficient to support a conviction of driving under the influence). There was substantial evidence before the Commission to support its finding.

### D

■■■ There was substantial evidence to support the Commission's finding that Down Under served liquor to a person under the age of 21. The customer involved, Ms. Savage, was under the age of 21. She was served liquor by Down Under and she was charged the night of the "raid" with consumption of alcohol by a minor and later pled guilty to the charge. She had a stamp on her hand indicating she was 21 or over which had been obtained by showing an identification that gave her incorrect age. She testified that she displayed an identification which showed she was 20. There was evidence to indicate that Down Under's doorman may not have followed appropriate "carding" procedures for her.

Down Under counters by arguing that the whiskey sour the customer ordered was never analyzed to determine the presence of alcohol, the customer was not asked by the police to produce the identification she had shown the doorman nor to compare her hand stamp to others given out at the door for the underage patrons allowed entrance. The Commission weighed these arguments

below, but Down Under still did not show how, if its "carding" procedure was being used the night of the raid, this patron, under the age of 21, obtained a 21 or over stamp allowing her to drink liquor. It did not raise the statutory defense that the patron presented identification which would lead a reasonable person to conclude the patron was 21 or over. *4 Del.C.* § 713(a)(1).

As before, a large part of Down Under's attack goes to the credibility of the witnesses which the Commission, not this Court, resolves. The attack on the failure to analyze the drink goes to the weight of that testimony and was argued below. None of this alters the existence of substantial evidence to support the Commission's findings.

### V

■■■ Down Under contends that, since Giroud and Ms. Savage were not advised of their *Miranda* rights, their statements to the police were inadmissible at the hearing. It does not appear that any statement of Giroud's given to a law enforcement person the night of the raid was used at the hearing. Absent such, there is no need to discuss this contention as it relates to Giroud. However, statements made by Ms. Savage were testified to by law enforcement people at the hearing.

■■■ In any event, Down Under does not have standing to either invoke Ms. Savage's *Miranda* rights or claim they were denied (assuming they were). *United States v. Fredericks*, 586 F.2d 470 (5th Cir.1978), *cert. denied* 440 U.S. 962, 99 S.Ct. 1507, 59 L.Ed.2d 776 (1979); *United States v. Fortna*, 796 F.2d 724 (5th Cir., 1986), *cert. denied* 479 U.S. 950, 107 S.Ct. 437, 93 L.Ed.2d 386 (1986); *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). The statements she gave to the police on the night of the raid were admissible and properly before the Commission. In addition, Ms. Savage testified before the Commission.

Based on the foregoing, the decision of the Alcoholic Beverage Commission is hereby AFFIRMED.