# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

GENESIS HEALTHCARE d/b/a )
SEAFORD CENTER, Authorized )
Medicaid Representative of RUTH )
JONES, )
     )
        Appellant, )
     )
       v. )   C.A. NO.: N17A-11-001 AML
     )
THE DELAWARE DEPARTMENT )
OF HEALTH AND SOCIAL )
SERVICES - DIVISION OF SOCIAL )
SERVICES, )
     )
        Appellee. )

Submitted: March 1, 2018
Decided: June 22, 2018

**On Appellant's Appeal from the Department of Health and Social Services
Division of Medicaid and Medical Assistance Hearing Officer: AFFIRMED**

## MEMORANDUM OPINION

Margaret F. England, Esquire, of GELLERT SCALI BUSENKELL & BROWN, LLC, Wilmington, Delaware, Attorney for Appellant.

A. Ann Woolfolk, Esquire, of the STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, Attorney for Appellee.

**LeGROW, J.**

This an appeal from the Department of Health and Social Services ("DHSS") Hearing Officer's decision concerning Appellant's denial of long term care Medicaid benefits due to her statutorily-excessive income. The appeal presents four primary questions, namely whether: (i) this Court has jurisdiction to hear the appeal; (ii) DHSS properly closed Appellant's application due to excessive income; (iii) the application denial and Fair Hearing violated Appellant's due process rights; and (iv) DHSS violated the Americans with Disabilities Act ("ADA") when it denied Appellant's application.

The issues in this appeal turn upon the eligibility requirements under Delaware's Medicaid program, specifically when income is considered "available" to an allegedly incapacitated applicant and whether Delaware's requirements comply with the requirements under Section 1396a of the federal Medicaid statute. Because I find DHSS properly denied Appellant's Medicaid application, I affirm the Hearing Officer's decision. My reasoning follows.

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 9, 2016, Appellant Ruth Jones was admitted to the Seaford Genesis Healthcare Center ("Genesis"). Genesis diagnosed Jones with Alzheimer's disease, hypertension, pulmonary disease, and dementia. Based on her diagnosis, Genesis determined Jones was incompetent and could not make

financial decisions for herself. Although Jones first was admitted as a short-term patient, it quickly became apparent that she would need extended 24-hour care.

On June 2, 2016, Genesis applied for Long Term Care Medicaid (the "LTC application") on Jones' behalf. That same day, Jones, along with her daughter Rosemarie Tell, attended an application interview with the Division of Medicaid and Medical Assistance ("DMMA"). Because DMMA had reason to believe, based on the LTC application, that Jones' gross income exceeded the statutory limit for LTC eligibility, DMMA explained Jones would need to establish a Miller Trust in order to become Medicaid eligible. During the interview and in the application, Tell presented herself inaccurately as Jones' legal guardian.[1] Although Tell filed shortly before or after the interview a petition with the Court of Chancery to be appointed Jones' legal guardian, that petition remained pending and Tell was not appointed guardian until October 14, 2016. During the interview, DMMA provided Genesis and Tell with the first "We Need" letter. This letter explained that Jones, or Tell, would need to provide verification of the Miller Trust's establishment and proof of legal guardianship by June 17, 2016, in order to keep Jones' LTC application open.

---

[1] B-000014. Tell or Genesis answered "Yes" in the response to the question "Has anyone been appointed as applicant's Legal Guardian/Power of Attorney" and identified "Rosemarie Tell" as that individual.

On July 5, 2016, DMMA sent a second "We Need" letter to Tell because DMMA had not received the requested information. Tell's guardianship application, however, was "delayed," preventing her from establishing a Miller Trust on Jones' behalf.[2] There is no indication in the record that Appellant advised DHSS of these delays. On July 26, 2016, having received no response to its two letters requesting documentation, DHSS denied Jones' LTC application because her income exceeded the statutory limit and she failed to establish a Miller Trust.

Jones reapplied for LTC benefits, and on November 29, 2016, DHSS received confirmation that Jones established a Miller Trust during the month of November 2016. DHSS then notified Jones that she was approved for benefits effective November 1, 2016. Because Jones' LTC application initially was denied, Genesis incurred over $43,000 in costs caring for Jones between March and November 2016.

On March 1, 2017, Jones, by and through Genesis, filed a request for a Fair Hearing to review DHSS's application denial from July 26, 2016. After several extensions and delays, the Fair Hearing took place on August 9, 2017. At the Fair Hearing, Genesis argued an incapacitated individual's income cannot be counted toward the statutory Medicaid eligibility limit because an incapacitated individual's income is not "available" to the individual under federal law. Genesis

---

[2] *Id.*

3

also argued that denying an incapacitated individual's LTC application violated the applicant's due process rights and constituted disability discrimination in violation of the ADA.

In a written decision, the Hearing Officer ruled federal law did not prohibit counting an incapacitated individual's income, and that DMMA properly determined Jones' income legally was available to her. The Hearing Officer also held the July 26, 2016, application denial did not violate Jones' due process rights because, under the United States Supreme Court's decision in *Goldberg v. Kelly*,[3] due process only applies when an individual's public assistance benefits erroneously are discontinued. Because Jones never received LTC benefits, the Hearing Officer reasoned Jones' due process rights were not infringed.

The Hearing Officer further ruled DHSS properly closed Jones' application because state agencies are obligated under federal law to determine an applicant's LTC eligibility within 90 days of receiving the LTC application. The Hearing Officer concluded that DMMA provided Jones with all the required notifications and requests for verification and processed her LTC application in a timely manner under applicable law. The Hearing Officer's decision did not address Genesis's ADA claim. On November 11, 2017, Genesis appealed the Hearing Officer's decision to this Court.

---

[3] 397 U.S. 254 (1970).

4

## THE PARTIES' CONTENTIONS

On appeal, Genesis argues the Hearing Officer erred in finding Jones' income legally was available, contending DHSS should have held Jones' LTC application open until the Court of Chancery appointed a guardian. Genesis also asserts the Hearing Officer erred in holding Jones' due process rights were not violated by DHSS's denial of her LTC application. Additionally, Genesis renews its argument that DHSS's denial constituted disability discrimination in violation of the ADA.

DHSS first argues this Court lacks jurisdiction to hear the appeal because Genesis's request for a Fair Hearing was untimely even though Genesis's appeal from the Hearing Officer's decision below was timely. Alternatively, DHSS contends it properly counted Jones' income as "available" in determining her LTC eligibility. DHSS also maintains due process was satisfied during the application denial and the Fair Hearing processes. Finally, DHSS argues Genesis's ADA argument is overly broad and unsupported by law.

## ANALYSIS

An appellate court's review of a Board decision is limited. The Court merely determines whether the decision was supported by substantial evidence and free of legal error.[4] Upon review of an administrative agency's findings, the Court "will not substitute its judgment for that of an administrative body where there is

---

[4] *Ward v. Dep't of Elections*, 2009 WL 2244413, at *1 (Del. July 22, 2009).

5

substantial evidence to support the decision and subordinate findings of the agency."[5] "Substantial evidence is that which 'a reasonable mind might accept as adequate to support a conclusion.' It is more than a scintilla, but less than a preponderance of the evidence. It is a low standard to affirm and a high standard to overturn. If the record contains substantial evidence, then the Court is prohibited from reweighing the evidence or substituting its judgment for that of the agency."[6] When reviewing the Board's conclusions of law, the Court's review is *de novo*.[7]

## A. DHSS waived its timeliness argument.

DHSS argues Jones' March 1, 2017, request for a Fair Hearing was untimely and therefore the appeal before this Court is time-barred. DHSS argues the 90-day time limitation to request a Fair Hearing began to run when DHSS denied Jones' LTC application on July 26, 2016. DHSS contends the request for a Fair Hearing was filed approximately eight months after Jones's LTC application was denied, the request therefore was untimely, and this appeal by extension also is untimely. DHSS argues the appellate authority of this Court is jurisdictional and therefore cannot be waived by the parties.

---

[5] *Olney v. Cooch*, 425 A.2d 610, 613 (Del. 1981).
[6] *Hanson v. Delaware State Public Integrity Comm'n*, 2012 WL 3860732, at *7 (Del. Super. Aug. 30, 2012).
[7] *Ward*, 2009 WL 2244413, at *1.

Under Delaware's Medicaid program, an LTC applicant may request a Fair Hearing within 90 days of the application's denial.[8] Applicants seeking review of a Hearing Officer's decision may file an appeal to the Superior Court within 30 days of the Hearing Officer's decision.[9]

> Under the waiver rule, issues or arguments that are not raised to an administrative agency cannot be considered by a reviewing court. . . . [T]he waiver rule "furthers the goal of permitting agencies to apply their specialized expertise, correct their own errors, and discourage litigants from preserving issues for appeal."[10]

Here, DHSS did not argue to the Hearing Officer that Jones' Fair Hearing request was untimely,[11] and that issue was not addressed in the Hearing Officer's decision. Because the timeliness issue was not raised to the Hearing Officer, DHSS has waived that argument on appeal. Although DHSS correctly argues that the Court's appellate jurisdiction cannot be waived, DHSS is not contesting the timeliness of Genesis's appeal to this Court. Rather, DHSS disputes the timeliness of the request for a Fair Hearing. That argument does not implicate this Court's

---

[8] DSSM at § 5305(1)(C) ("The hearing officer does not have authority to hear an appeal that is filed more than 90 days from the effective date of action. The hearing officer does not have authority to extend the time period beyond 90 days of the effective date of action.").

[9] 31 *Del. C.* § 520 ("Any applicant for or recipient of public assistance benefits under this chapter or Chapter 6 of this title against whom an administrative hearing decision has been decided may appeal such decision to the Superior Court if the decision would result in financial harm to the appellant. The appeal shall be filed within 30 days of the day of the final administrative decision. The appeal shall be on the record without a trial de novo.").

[10] *Berchock v. Council on Real Estate Appraisers*, 2001 WL 541026, *4 (Del. Super. April 26, 2001) (quoting *Down Under, Ltd. v. Alcoholic Beverage Control Comm'n.*, 576 A.2d 675, 677 (Del. Super. 1989)).

[11] *See* Fair Hr'g Tr.

7

appellate jurisdiction because there is no question Jones' appeal to this Court was timely. Accordingly, because DHSS waived the issue of timeliness during the hearing stage, it may not raise it on an appeal before this Court.[12]

## B. DHSS properly closed Jones' LTC application because Jones' income exceeded the statutory limit and she failed to establish a Miller Trust.

Genesis argues it was improper for DHSS to close Jones' LTC application when DHSS knew Jones was incapacitated and had no legal guardian. Genesis argues this denial violated federal mandates protecting incapacitated LTC applicants. Additionally, Genesis argues DHSS erred by counting Jones' income toward the statutory limits because Jones' income legally was "unavailable" to her due to her incapacity.

### 1. Substantial evidence shows DHSS reasonably believed Tell served as Jones' legal guardian when her LTC application was denied on July 26, 2016.

Genesis argues the record shows DHSS knew Jones had no guardian because DHSS requested copies of Jones' guardianship verification documents in both the June 2, 2016, and July 5, 2016, "We Need" letters. In other words, Genesis argues DHSS's request for guardianship verification is an admission that DHSS knew Jones had no legal guardian.

---

[12] *Berchock*, 2001 WL 541026 at *4-*5 (rejecting the plaintiff's argument that the state's two-and-a-half-year delay in bringing the complaint before the Council of Real Estate Appraisers substantially prejudiced her because the plaintiff did not raise the issue of the state's delay before the Council).

8

Jones' June 2, 2016, LTC application asks the applicant "[h]as anyone been appointed as applicant's Legal Guardian/Power of Attorney?"[13] Jones' LTC application contains a check-mark next to "Yes__" and lists "Rosemarie Tell" as the name of Jones' legal guardian. In the same text box, the application notes "You will need to provide copies of Guardianship and/or Power of Attorney papers."[14]

In its June 2, 2016, and July 5, 2016, "We Need" letters, DHSS directed Tell to provide guardianship verification documents.[15] At the Fair Hearing, DHSS testified that Tell represented herself as Jones' legal guardian and, by her representation, assumed responsibility for completing the "We Need" letters.[16] Additionally, the Hearing Officer found Tell signed Jones' LTC application as Jones' legal guardian.[17]

Here, the record supports the Hearing Officer's finding that DHSS believed Jones had a guardian based on Genesis's and Tell's representations in the LTC application. In view of Tell's representation, DHSS sent Tell two "We Need" letters requesting documents verifying her appointment as guardian. Genesis

---

[13] Ex. 3 to Appellee's Answer Br.

[14] *Id.*

[15] Ex. 4 to Appellee's Answer Br. 1-2.

[16] Fair Hr'g Tr. 17:14-17 (". . . when the woman who claimed to be a guardian signs the paper . . . she took the responsibility to do that for her, she was claiming to us that she had guardianship over [Jones].").

[17] Hr'g Decision 2 ("Scott testified that this application was signed by Rosemarie Tell as the Claimant's legal guardian or power of attorney.").

argues the "We Need" letters show DHSS knew Jones had no legal guardian because the letters were asking for guardianship verification. The request for verification, however, was made after Tell presented herself to DHSS as Jones' legal guardian. Jones' LTC application notes that a person presenting herself as the applicant's legal guardian must provide supporting documentation. In other words, checking the box and signing the application was not sufficient proof that Tell had authority to act on Jones' behalf. Sending requests for guardianship verification, therefore, is consistent with DHSS's alleged belief that Tell was Jones' legal guardian.

Accordingly, substantial evidence shows DHSS had reason to believe Tell already had been appointed Jones' legal guardian at the time she filed the LTC application. This finding largely makes no difference, however, because even if DHSS knew Jones was incapacitated with no legal guardian, it properly applied federal and state regulations regarding Jones' Medicaid eligibility.

### 2. Section 1396a does not prohibit a state from counting an allegedly incapacitated individual's income when determining her eligibility for Medicaid.

Genesis argues DHSS erred by counting Jones' income in determining her LTC eligibility. Genesis argues federal law requires state Medicaid programs only to count income that legally is available to an applicant. Genesis cites 42 U.S.C. § 1396a(a)(17), which provides, in relevant part, "A State plan for

medical assistance must . . . include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which . . . provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, *available* to the applicant or recipient . . . ."[18]

Genesis then argues federal law prohibits treating an incapacitated applicant's income as available to the applicant because the income cannot be liquidated. In support of this assertion, Genesis cites 20 C.F.R. § 416.1201(a)(1), which provides, in relevant part, "If a property right cannot be liquidated, the property will not be considered a resource of the individual . . . ."[19] Genesis contends the cited provisions create a federal mandate that prohibits states from taking into account an incapacitated applicant's income when determining the applicant's eligibility for Medicaid.

Genesis, however, misconstrues the meaning of "available income" under Section 1396a(a)(17). Under that section, a state's standard for determining eligibility only must consider "available income" "in accordance with standards prescribed by the Secretary [of DHHS]."[20] Genesis cites no standard promulgated

---

[18] 42 U.S.C. § 1396a(17) (2016) (emphasis added).
[19] 20 C.F.R. § 416.1201(a)(1) (2017).
[20] 42 U.S.C. § 1396a(17) (2016). *See Himes v. Shalala*, 999 F.2d 684, 689-90 (2d Cir. 1993) ("[B]ecause neither the direct language of the statute nor the legislative history supports the plaintiffs' interpretation, and § 1396a(a)(17)(B) explicitly confers on the Secretary the authority

by the Secretary to define "available income." Instead, Genesis reaches to an unrelated provision of the federal register to suggest "available income" means liquid resources under 20 C.F.R. § 416.1202(a)(1).

Section 416.1201, however, defines resources for the purpose of determining eligibility for supplemental security income ("SSI") for the aged, blind, and disabled.[21] Genesis's attempt to conflate "available income" for LTC benefits with a liquid "resource" under the SSI program fails for two reasons. First, Medicaid distinguishes between "income" and "resources" and has separate eligibility rules for each. The reference to a "liquid resource" is wholly distinct from income.

Second, there is nothing in Section 1396a from which this Court may conclude Congress intended to incorporate a definition from the regulations defining the SSI program. Although Section 1396a does incorporate definitions from other titles of the federal code, such incorporation is done explicitly with references to the precise provision supplying the definition.[22] This Court is not at liberty to mix-and-match definitions from across the entire body of federal law when the statute explicitly grants the DHHS Secretary the interpretive power.

---

to give substance to the meaning of the term "available," Chevron dictates that we defer to the Secretary's interpretation.").

[21] 20 C.F.R. § 416.101(l) (2017) ("Subpart L of this part defines the term resources and sets forth the statutory exclusions applicable to resources for the purpose of determining eligibility.").

[22] *See, e.g.,* 1396a(a)(25)(I) (incorporating the definition of "group health plans" from the Employee Retirement Income Security Act of 1974) (". . . the State shall provide assurances satisfactory to the Secretary that the State has in effect laws requiring health insurers, including self-insured plans, group health plans (as defined in section 607(1) of the Employee Retirement Income Security Act of 1974 [29 U.S.C.A. 1167(1)])").

12

Further, no provision in Section 1396a supports the assertion that income is not available to incapacitated individuals. Accordingly, neither Section 1396a nor Section 416.1202 prohibit states from taking into account the income of an incapacitated individual in determining their eligibility for LTC.

### 3. DHSS properly counted Jones' income as legally "available" under federal and state law.

Having determined that Section 1396a does not prohibit counting an incapacitated individual's income toward the LTC-eligibility limit, this Court must consider whether DHSS properly closed Jones' LTC application under the Delaware Social Services Manual ("DSSM").

Federal and state law provides that a state must determine an applicant's Medicaid eligibility within 90 days of the application's filing.[23] An LTC applicant must be both medically and financially eligible.[24] In order for a nursing facility resident to be financially eligible, her income must be under 250% of the federal SSI.[25] At the time of Jones' LTC application, 250% of SSI equaled $1,833.00.[26]

DSSM 20200.1 provides:

> Available income Is [sic] the total amount of money authorized (designated by the payor) for the recipient's benefit, whether received by the recipient directly or received by a representative payee. Income includes anything received by the individual, in cash or in kind,

---

[23] 42 C.F.R. § 435.912(c)(3)(i) (2017); DSSM at § 20103(1)(1).
[24] DSSM at § 20100. Jones' medical eligibility was not in dispute, only her financial eligibility.
[25] DSSM at § 20100(2)(2).
[26] Ex. 6 Appellee's Answer Br. 2.

that can be used to meet needs for food, clothing or shelter.[27]

Income is available, therefore, when it is authorized by the payor—for example Social Security—for the recipient's benefit. Income is determined in the month it is received, subject to a $20 disregard.[28] If an applicant's income is over the statutory limit, the applicant may place income in a Miller Trust.[29] Once placed in trust, that income will not be counted as the applicant's income for the purpose of determining her eligibility for LTC benefits.[30] An applicant whose income is over the statutory limit, therefore, still may become eligible for LTC benefits by placing her income in a Miller Trust.

During the initial interview with an applicant, the DHSS Medicaid worker must explain the application's 90-day time limitation to the applicant.[31] The worker also must explain that all documentation must be received by DHSS by the date indicated on the "We Need" letter or the application will be denied.[32] The worker may extend the deadline another 15 days by sending a second "We Need" letter to the applicant or representative.[33] A third extension may be granted with

[27] DSSM at § 20200(1).
[28] DSSM at § 20240(1).
[29] DSSM at § 20400(11).
[30] DSSM at § 20400(11)(1).
[31] DSSM at § 20103(1)(2).
[32] *Id.*
[33] DSSM at § 20103(1)(3).

supervisor approval in the event of unusual circumstances.[34] In all cases, the applicant or representative is responsible for delivering all the documentation needed for determining the applicant's eligibility.[35] "If the information is not received by the given deadline date, the application will be denied."[36]

At the time of her LTC application, Jones received income in the form of pensions and social security.[37] DHSS properly counted this income as available income because it was designated by the payor for Jones' benefit. As set forth above, Jones' incapacity and lack of a legal guardian, even if known to DHSS, did not affect the calculation of her monthly income, which amounted to $2,208.91.[38] At the time of her LTC application on June 2, 2016, therefore, Jones' available income exceeded the Medicaid eligibility limit by $375.91 and, in order to qualify for LTC benefits, the excess income had to be placed in a Miller Trust.

Jones' initial interview took place on June 2, 2016. During the interview, DHSS gave Tell the first "We Need" letter, which sought verification by June 17, 2016, that a Miller Trust had been established. DHSS sent a second "We Need" letter on July 5, 2016, after Tell failed to submit the supporting documents. At that point, Tell had 15 days to submit the necessary verification or ask for an extension

---

[34] *Id.* ("Unusual circumstances include, but are not limited to, awaiting placement in a Medicaid nursing facility bed or difficulty obtaining an out-of-state deed.").
[35] DSSM at § 20103(2).
[36] DSSM at § 20103(1)(3).
[37] Ex. 6 Appellee's Answer Br. 2.
[38] *Id.*

15

due to unusual circumstances. Tell failed to provide the necessary documents by the deadline and DHSS closed Jones' LTC application on July 26, 2016.[39] Accordingly, because Jones' income exceeded the statutory limit, and Tell failed to seek an extension or provide documents by the deadline verifying the Miller Trust's establishment, DHSS properly closed Jones' LTC application on July 26, 2016.

### C. The Fair Hearing preserved Jones' due process rights under *Goldberg v. Kelly.*

Genesis next argues it is a violation of due process for a state agency to deny an incapacitated individual's LTC application when: (1) a legal guardian has not been appointed to the applicant; (2) the individual has not been notified that her "assets" exceed the statutory limit and is not given time to access and spend down those "assets;" and (3) the state agency knows that the individual is incapacitated and has no legal guardian.[40]

In support of its due process argument, Genesis cites generally to Section 1396a. Genesis's Section 1396a argument, however, fails to cite a provision of

---

[39] Genesis argues that, under Section 1396a, DHSS should have held Jones' LTC application open until she was able to appoint a legal guardian or spend down her assets. DHSS, however, was required to determine Jones' eligibility within 90 days of receiving her LTC application. 42 C.F.R. 435.912(c)(3)(i) (2017) ("Except as provided in paragraph (e) of this section, the determination of eligibility for any applicant may not exceed[] Ninety days for applicants who apply for Medicaid on the basis of disability . . . ."). DHSS therefore was required to close Jones' LTC application after 90 days at the latest. Moreover, a "spend down" of assets has nothing to do with income-eligibility, which was the issue preventing Jones' eligibility. A "spend down" relates to assets counted as resources; there are separate eligibility limits for income and resources, and an applicant must meet both limits.

[40] Appellant's Br. 11. *See* n. 39 & 42, *infra*.

that section that invokes an incapacitated individual's due process rights. First, Section 1396a is a lengthy subchapter of the Social Security chapter[41] setting forth the federal requirements for Medical Assistance Programs administered by states. Notwithstanding Section 1396a's length, it contains no provision prohibiting a state from denying the application of an incapacitated individual when that individual has no legal guardian.

Second, Genesis contends it is a violation of due process to deny an LTC application when the incapacitated applicant has not been informed that her "assets" exceed the statutory limit and has not been given time to spend down those assets. DHSS denied Jones' LTC application, however, due to excessive income, not excessive resources.[42] Third, as discussed above, DHSS had reason to believe Tell served as Jones' legal guardian. DHSS was not aware that Jones had no legal guardian. Even if DHSS was aware, however, Section 1396a does not prohibit denying an LTC application when the agency is aware that the applicant is incapacitated and has no legal guardian. In short, Section 1396a does not support Genesis's due process argument.

---

[41] *See generally*, 42 U.S.C. § 1396a (2016).

[42] Genesis's briefs and arguments give unwarranted attention to Jones' access to her bank account. Genesis appears, at times, to argue that Jones' application was denied because her bank account contained excessive assets. Jones' application, however, was denied to due to her level of income, not the amount of assets in her bank account. "Assets" are resources subject to a separate eligibility limit.

In *Lawson* ex rel. *Lawson v. Dep't Health & Soc. Serv.*,[43] this Court noted the procedural requirements for satisfying due process in the context of a Medicaid application. "The State of Delaware recognizes that Medicaid benefits are property rights and as such, the recipient may not be deprived of these benefits without due process of law."[44] The *Lawson* Court explained:

> The requirements of procedural due process were set by the United States Supreme Court in *Goldberg v. Kelly* as follows:
>
> 1) timely and adequate notice detailing the reasons for a proposed termination.
> 2) an effective opportunity (for the recipient) to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally.
> 3) retained counsel, if desired.
> 4) an "impartial" decision maker
> 5) a decision resting "solely on the legal rules and evidence adduced at the hearing"
> 6) a statement of the reasons for the decision and the evidence relied on.[45]

These requirements provide that a state agency must hold a "fair hearing" before the state denies Medicaid benefits.[46]

Here, the Fair Hearing satisfied Jones' due process rights under *Goldberg*. Genesis does not specifically argue the Fair Hearing violated any of the *Goldberg* procedural protections, but I address those requirements for the sake of a complete

---

[43] 2004 WL 440405 (Del. Super. Feb. 25, 2004).
[44] *Id.* at *3.
[45] *Id.* at *3-*4 (citing *Goldberg v. Kelly*, 397 U.S. 254, 266-67 (1970)).
[46] *Id.* at *4.

record. First, Jones received timely notice that her LTC application was denied and the reason for its denial, namely, that her income exceeded the statutory limit.[47] Second, the notice explained how her income was calculated as well as how Jones could request a Fair Hearing to challenge the agency's decision.[48]

Third, the August 9, 2017, Fair Hearing transcript shows Jones, through Genesis, had effective opportunity to confront DHSS's witnesses and present her own arguments orally.[49] Fourth, Jones, through Genesis, was represented by counsel and no evidence suggests the Hearing Officer was partial in the case. Finally, the Hearing Officer issued a decision that rested on the evidence presented at the Fair Hearing and cited the provisions of the DSSM that governed the legal issue. Because the Fair Hearing satisfied the procedural requirements set out in *Goldberg*, the agency's denial notice and the Fair Hearing satisfied Jones' due process rights.

The Hearing Officer erred as a matter of law by holding that Jones' due process rights only could be impinged by the erroneous discontinuation of public assistance benefits. As this Court held in *Lawson*, an applicant's due process notice and "fair hearing" rights are triggered by adverse state action, such as the denial of benefits.[50] To the extent the Hearing Officer held the denial did not

---

[47] Ex. 6 to Appellee's Answer Br.
[48] *Id.*
[49] Fair Hr'g Tr. 12-21.
[50] *Lawson* ex rel. *Lawson*, 2001 WL 440405 at *4.

trigger Jones' due process rights, that conclusion was erroneous. As set forth above, however, that legal error does not require reversal because the Fair Hearing satisfied Jones' due process rights.

Additionally, Genesis argues DHSS should afford Jones Medicaid eligibility dating back to May 10, 2016, because 42 U.S.C. 1396a(a)(34) allegedly provides that applicants should be afforded Medicaid benefits for the three months pre-dating their application. This averment overlooks an important limitation. In the event an applicant is determined eligible, Medicaid benefits can extend as far back as three months before the application was made, but only if the applicant was eligible for benefits during those three months. Section 1396a(a)(34) provides, in relevant part:

> [I]n the case of any individual who has been determined to be eligible for medical assistance under the plan, such assistance will be made available to him for care and services included under the plan and furnished in or after the third month before the month in which he made application (or application was made on his behalf in the case of a deceased individual) for such assistance *if such individual was (or upon application would have been) eligible for such assistance at the time such care and services were furnished* . . .[51]

Section 1396a(a)(34), therefore, requires the individual to have met the eligibility requirements at the time the services were furnished in order to receive benefits for those services.

---

[51] 42 U.S.C. § 1396a(a)(34) (2016) (emphasis added).

Although Genesis argues Jones' Medicaid benefits should cover her expenses dating back to May 10, 2016, DHSS properly paid her benefits dating back to November 1, 2016. Jones was not eligible for LTC benefits until her Miller Trust was established and funded on November 22, 2016. The Miller Trust satisfied Jones' eligibility requirements by removing the issue of her statutorily-excessive income. On December 5, 2016, DHSS notified Genesis that Jones was approved for LTC effective November 1, 2016. Because Jones was not eligible for LTC before November 2016, DHSS properly denied benefits for care provided before that date.

### D. DHSS did not violate the Americans with Disabilities Act because DHSS did not deny Jones' LTC application due to her disability.

Genesis argues DHSS's denial of Jones' LTC application constitutes disability discrimination in violation of the Americans with Disabilities Act.[52] In support of its argument, Genesis quotes 42 U.S.C. § 12132, which provides, "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or

---

[52] Genesis's brief devotes only two sentences to this argument and does not explain how DHSS's denial specifically constituted disability discrimination. The failure to develop this argument effectively waives any more specific argument Genesis might have advanced. *See Roca v. E.I. du Pont de Nemours & Co.*, 842 A.2d 1238, 1243 n.12 (Del. 2004) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. . . . It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work . . . . Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.")).

be subjected to discrimination by any such entity."[53]  Genesis appears to contend that DHSS's denial amounted to discrimination against Jones because her disability allegedly left her unable to comply with DHSS's eligibility requirements.

The elements of proving an ADA claim were examined in *Lincoln Cercpac v. Health & Hosp. Corp.*[54]

> To establish a violation of Title II, plaintiff must show that: (1) he or she is a "qualified individual with a disability," (2) he or she is being excluded from participation in or being denied the benefits of some service, program or activity by reason of his or her disability, and (3) the entity which provides the service, program or activity is a public entity.[55]

In *Lincoln Cercpac*, a group of disabled children brought an ADA claim against the public entity that managed New York City's municipal hospitals after the entity closed a clinic that provided disability-related services.  The services formerly provided by the clinic could, in fact, be obtained at nearby hospitals.[56] The Southern District held plaintiffs were not likely to succeed on the merits of an ADA claim because plaintiffs were not denied benefits by reason of their disability.  The Court found the plaintiffs failed to identify a service that was available to able children that plaintiffs were denied due to their disability.[57]  The Court reasoned that a relocation of services is not a denial or exclusion of

---

[53] 42 U.S.C. § 12132 (2016).
[54] *Lincoln Cercpac v. Health & Hosp. Corp.*, 920 F.Supp. 488 (S.D.N.Y. 1996).
[55] *Id.* at 497.
[56] *Id.*
[57] *Id.*

services.[58] Additionally, the Court held disabled individuals are not entitled to more services than able individuals, even if the disabled individuals need those services.[59]

Here, DHSS did not deny Jones' LTC application because of her disability, but rather because her income exceeded the eligibility limit. Further, DHSS reasonably believed Tell served as Jones' legal guardian and that Tell would assist with submitting Jones' LTC application. When Tell failed to provide the necessary verification, DHSS denied Jones' LTC application. Because DHSS reasonably believed Tell served as Jones' legal guardian, there is no evidence in the record that her disability factored into DHSS's decision to deny the LTC application. Further, Genesis has failed to point to any service that DHSS provides to able individuals that was denied to Jones.

## CONCLUSION

For the foregoing reasons, the Hearing Officer's decision is **AFFIRMED.**
**IT IS SO ORDERED.**

---

[58] *Id.*
[59] *Id.*